Argued April 4, decided April 23, rehearing denied June 4, 1912.

## TERWILLIGER LAND CO. *v.* CITY OF PORTLAND.

[123 Pac. 57.]

PLEADING—DEMURRER—ADMISSIONS.

1. On demurrer to a complaint, the facts stated therein are deemed
to be true.

MUNICIPAL CORPORATIONS—POWER TO IMPROVE STREETS—STATUTORY
AUTHORITY.

2. Where a statute from which the authority to improve streets is
derived prescribes the mode in which it shall be exercised, that mode alone
may be pursued, and the officers of a city, the charter of which requires
the letting of contracts for public improvements to the lowest responsible
bidder, have no authority to let contracts, except to the lowest bidder.

CONTRACTS—ILLEGALITY—PREVENTION OF COMPETITION.

3. All contracts in which the public are interested which tend to
prevent competition required by statute are void.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—CONTRACTS—VALIDITY.

4. Under the Portland city charter, requiring the letting of contracts
for public improvements to the lowest responsible bidder, the acts of
the council of the city in adopting ordinances for the improvement of
streets by paving with "Hassam pavement," and in inviting bids therefor
in such a manner that only the person entitled to use such pavement
would bid for the work, and in letting contracts to such person pursuant
to his sole bid, are void, and the contracts are illegal.

MUNICIPAL CORPORATIONS—MUNICIPAL IMPROVEMENTS—STATUTORY
METHOD—PLEADING.

5. An allegation in the complaint in a suit by a taxpayer of a city
to declare void contracts for public improvements that the city engineer
did not post any notice as required by the charter of the city, without
pointing out wherein the notices failed to fulfill the charter requirements,
does not raise the question of the sufficiency of the charter notice.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ACTIONS BY TAXPAYERS.
    6. A general taxpayer of a city may sue as such to declare void contracts between the city and a contractor for public improvements.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ACTIONS BY TAXPAYERS.
    7. Though, under Portland city charter, providing that contractors for public improvements shall rely on the funds accruing from the property benefited, assessed, and liable therefor. except where the assessment is invalid, a general taxpayer of the city has sufficient interest to sue to adjudge contracts for a public improvement invalid because made in violation of the charter, though the charter provides for a re-assessment for an improvement when any assessment is void, which does not apply where the tax is void *ab initio.*

From Multnomah:   CALVIN U. GANTENBEIN, Judge.
Statement by MR. JUSTICE BEAN.

This is a suit by the Terwilliger Land Company against the City of Portland, the Oregon Hassam Paving Company, a corporation, and The Title Guaranty & Surety Company, a corporation. The circuit court sustained a demurrer to the complaint, and from a decree entered dismissing the suit plaintiff appeals. The Title Guaranty & Surety Company, being surety on the bonds given by the paving company, was made defendant. The suit involves the validity of 13 contracts for street improvements in the city of Portland; the contemplated cost aggregating approximately $800,000. Each of these contracts was let in substantially the same manner. The complaint alleges the corporate character of plaintiff and defendants, and shows that the plaintiff is the owner of real estate in the city of Portland, assessed at $129,550, and a taxpayer of such city. According to the substance of the allegations of the complaint, as to the first contract mentioned therein, on October 27, 1909, the city council adopted a resolution to improve a certain portion of East Eleventh street by laying artificial stone sidewalks and curbs, and by paving the roadway with "Hassam pavement." The city engineer prepared and filed plans and specifications of the work, making but one estimate of the entire probable cost, which was $90,656 plus 5 per cent for engineering,

etc., aggregating $95,189. Resolutions were adopted by the council declaring its intention to so improve the street, and classifying the entire improvements as a "Hassam pavement." On April 29, 1910, the council adopted Ordinance 21,073, which provided for such improvements. Thereafter the executive board of the city published a notice, inviting bids for work, and requiring the bid to be accompanied by a check equal to 10 per cent of the aggregate proposal, to be forfeited, if the contract and bond for the performance of the work were not entered into in case the contract was awarded to the bidder. The Oregon Hassam Paving Company was the sole bidder. The executive board accepted such bid and awarded the contract to the company; the same being entered into on March 18, 1910. The proceedings in regard to each of the other contracts are set forth in the complaint, and the contracts awarded to the same company, at various dates from March 2, to October 5, 1910. It is further alleged: That J. W. Morris, the city engineer, did not post at each or either end of the improvements contemplated, or elsewhere, any notice as required by Section 376 of the charter, and never made an affidavit of posting any notice. That Ordinance 21,172, the specifications of the city engineer, and each of the contracts contain, among other provisions, the following requirements for making the Hassam pavement:

(1) "Thickness of Pavement.—The thickness of pavement shall be not less than six (6) inches from subgrade to the finished grade of street."

(2) "Spreading Stone.—Upon the finished subgrade clean, broken rock ninety per cent of amount varying in size from 2½ inches to 1½ inches shall be spread to a sufficient depth to bring the surface after rolling to the proper finished grade of the street, which shall be six (6) inches above subgrade."

(3) "Rolling.—This rock shall then be thoroughly compacted by rolling. * *"

(4) "Grouting.—The voids in the rock shall then be thoroughly filled with a grout consisting of one part of Portland cement with two parts of sand. * * "

(5) "Top Dressing.—Upon the surface of the pavement thus prepared shall be placed a very thin layer of peastone, which shall be thoroughly spread and rolled. * *"

That the paving company claimed to have the exclusive right to the use of the name "Hassam pavement," and to the laying of street pavement classified and labeled as such, and refused to permit any other person to lay any pavement so designated. That the pavement described in the specifications and notices for bids was, in each instance, designated as "Hassam pavement" unlawfully and arbitrarily, and contrary to the provisions of Section 379 of the city charter for the purpose of preventing competition among bidders upon such improvements, and that a monopoly might be created in favor of the Oregon Hassam Paving Company, thereby preventing any person, company, or corporation from bidding upon such work. That no other person could or would bid thereon, all of which the city officers well knew and acquiesced in. That it is the policy of the council in making any street improvements to refuse to accept any bid from, or let any contract to, other than the Oregon Hassam Paving Company, for the making of street improvements, classified as Hassam pavement; and that, under the conditions imposed, it was useless for other responsible and competent persons engaged in making contracts for such work to bid therefor. That during the past two or three years the Oregon Hassam Paving Company has secured from the city of Portland, in the manner and under the conditions herein set forth, contracts for the making of street improvements in excess of $2,000,000, upon which there has been absolutely no competition, and in respect to which the Oregon Hassam Paving Company has had

the complete monopoly.   Plaintiff further alleges that a pavement equally as good and differing in no substantial respect from that classified and designated in the plans and specifications, and composed of substantially the same material and proportions, can be laid at a profit to the contractor at not to exceed $1.25 per square yard; that, if the council and the city engineer would authorize, prepare, and adopt plans and specifications for the laying of pavement substantially of the same kind and quality as that described as "Hassam pavement," bids would be submitted by competent and responsible bidders for the laying of pavement in all substantial respects identical with that so classified at a price not exceeding $1.25 per square yard.   That the municipal officers will, unless restrained by the court, issue warrants in the form of municipal promissory notes of the city for such improvements, payable out of the general funds of the city, and thereafter will issue bonds of the city of Portland for substantially all of the improvements, and thereby increase the taxes of the municipality, and of plaintiff.

REVERSED.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Mr. F. J. Richardson,* with an oral argument by *Mr. Clark.*

For respondents there was a brief over the names of *Messrs. Carey & Kerr, Messrs. Hardy & Sawyer, Mr. Lawrence A. McNary, Mr. L. E. Latourette* and *Mr. Frank S. Grant,* City Attorney, with oral arguments by *Mr. Latourette* and *Mr. H. M. Sawyer.*

MR. JUSTICE BEAN delivered the opinion of the court.

The charter of the city of Portland (Section 379) requires that such contracts shall be let to the lowest responsible bidder for either the whole of the improvement, or such part as will not materially conflict with

the completion of the remainder. It is contended by counsel for plaintiff that it is shown by the complaint that the contracts in question were let to the Oregon Hassam Paving Company in violation of the above provisions of the charter, without competition, under circumstances creating a monopoly in favor of that company, and therefore void; that by designating the entire improvements of the streets as a "Hassam pavement" in the resolution of the council and in the notice for proposals given by the executive board, other responsible parties were precluded from submitting bids for the work. In short, plaintiff complains that if the same specifications and requirements as to the improvements were made, omitting only the name "Hassam pavement," then other responsible persons could and would bid for the construction of the work, and competition would arise, to the advantage of the city and the taxpayers.

1. Upon demurrer, the facts stated in the complaint must be deemed to be true. The gist of the complaint is that the contracts are illegal and void.

2. Where the statute, from which the authority to improve streets is derived, prescribes the mode in which it shall be exercised, that mode, and no other, must be pursued; for the statute is the sole source of authority. It has been said:

"The mode constitutes the measure of power."

2 Elliott, Roads and Streets, § 665; 2 Dillon, Municipal Corporations, § 783; *Nicolson Paving Co.* v. *Painter,* 35 Cal. 699, 706. Officers of the city of Portland had no authority to let such contracts except to the "lowest bidder."

3. It is a well-settled general rule that all contracts in which the public are interested, which tend to prevent the competition required by statute, are void.

*Fishburn* v. *City of Chicago,* 171 Ill. 338 (49 N. E. 532: 39 L. R. A. 482: 63 Am. St. Rep. 236) ; 2 Beach, Modern Law of Contracts, § 1108; 2 Dillon, Municipal Corporations, § 801.

4. It is not suggested that either the excavation work, broken rock, grout consisting of one part Portland cement and two parts sand, or peastone, required by the ordinance and contracts for the making of the pavement, is covered by letters patent. It is clearly set forth in the complaint that, by the insertion of the trade-name, "Hassam pavement" in the ordinances and proceedings for letting the several contracts, competition among those who might desire to become bidders for the performance of the work of improving the streets was restricted, and a monopoly in favor of the paving company created. The proceedings taken by the city officers and the notice inviting bids for the work were, in effect, to practically request bids from one certain company. Such acts on the part of the municipal body are subversive of the rights of the citizens, and a flagrant abuse of the authority conferred by the city charter. *Beckett* v. *Portland,* 53 Or. 169 (99 Pac. 659) ; *Houck* v. *City of Roseburg,* 56 Or. 238, 244 (108 Pac. 186). The alleged contracts fall under the ban of the general rule of law, and should, according to the complaint, be declared inoperative and void.

This question, upon which there is a conflict of authority, is not a new one. Several of the courts have plainly expressed their views in favor of the principle here announced. In *Fishburn* v. *City of Chicago,* 171 Ill. 338, 342 (49 N. E. 533: 39 L. R. A. 482: 63 Am. St. Rep. 236), the court said:

"The asphaltum offered for sale by the Barber Asphalt Company has no superior legal right in the markets, and is not entitled to be given any by the terms of the ordinance, nor is it lawful for the ordinance to give it

an improper preference, but it should be left to depend upon its merits for any monopoly it may obtain in the good opinion of the public. * * An ordinance making it indispensable that an article or substance in the control of but a certain person or corporation shall be used in the construction of a public work must necessarily create a monopoly in favor of such person or corporation, and also limit the persons bidding to those who may be able to make the most advantageous terms with the favored person or corporation. If all the ordinances adopted by the city council of the city of Chicago providing for the paving of streets and public places in the city should select the stock in trade of a particular firm or corporation as the only material to be used in making such street improvements, the evil would be intolerable; and, if they may lawfully select such article in one ordinance it cannot be unlawful to make it the settled policy of the city that material for paving streets shall be purchased of but one seller."

In *Smith* v. *Syracuse Improvement Company*, 161 N. Y. 484 (55 N. E. 1077), it appeared that proceedings were taken to pave a street in the city of Syracuse, N. Y., with "vitrified paving brick, manufactured by the New York Brick & Paving Company, of Syracuse, N. Y." About that time proceedings for the improveing of the same street with a different kind of material were initiated. Bids were submitted for both materials. The lowest bid for the laying of the brick pavement was less than that for any other material, and was ignored. The plaintiff, a general taxpayer, brought suit, averring that the contract had not been let to the lowest bidder. This contention was met by the claim that the proceedings for laying the brick pavement were wholly void, for the reason that a particular kind of brick controlled and manufactured by one company alone was specified; that this stifled competition and tended to create a monopoly. The New York Court of Appeals sustained this view, and held that the petition asking for the pavement of a

portion of such street with vitrified paving brick manufactured by the New York Brick & Paving Company of Syracuse, N. Y., and all the proceedings thereon, by the common council, were in violation of the provisions of the charter of the city which required that a contract for such work be let to the lowest bidder, and therefore void.

In the case of *National Surety Company* v. *Kansas City Hydraulic Press Brick Company,* 73 Kan. 196 (84 Pac. 1034), it appeared that proceedings were taken and a contract entered into for the improvement of a street with "No. 1 vitrified paving brick, Diamond brand," manufactured and controlled exclusively by one company. It was alleged that other kinds of vitrified paving brick could be obtained, equal in all respects to the kind specified, and that, while the contract in question was not made with the Diamond Brick & Tiling Company directly, the company was interested in it, and actively promoted the securing of the contract. The contract was held void. The statute required the work to be let to the "lowest responsible bidder." At page 203 of the opinion the court said:

"The object and purpose of this provision of the statute is to insure competition in the letting of contracts for public improvements. This is the uniform ruling of courts in reference to similar statutory and charter provisions governing cities."

See, also, *Shoenberg* v. *Field,* 95 Mo. App. 241 (68 S. W. 945) ; *Smith* v. *Syracuse Improvement Co.,* 161 N. Y. 484 (55 N. E. 1077) ; *Larned* v. *City of Syracuse,* 17 App. Div. 19 (44 N. Y. Supp. 857) ; *Allen* v. *Milwaukee,* 128 Wis. 678, 682 (106 N. W. 1099: 5 L. R. A. [N. S.] 680: 116 Am. St. Rep. 54: 8 Ann. Cas. 392) ; *Diamond* v. *City of Mankato,* 89 Minn. 48 (93 N. W. 911: 61 L. R. A. 448).

5. Plaintiff alleges that the city engineer did not post

any notice as required by Section 306 of the charter. It is in no way pointed out wherein the notices failed to fulfill the requirements of the charter, or in what manner, or in what particular, they are wanting; therefore this question cannot be considered.

6. It is contended upon the part of defendants that the plaintiff is not an interested party, and, according to the complaint, is not entitled to equitable relief. Whatever may be the rule elsewhere, the decisions of this court have established the doctrine that a general taxpayer, suing as such, and in no other capacity, is a proper party plaintiff, and entitled to a hearing. *Carman* v. *Woodruff*, 10 Or. 133; *State* v. *Pennoyer*, 26 Or. 205, 209 (37 Pac. 906: 41 Pac. 1104: 25 L. R. A. 862).

7. The claim is made that the cost of the improvement is assessed to the abutting property owners, and that the city of Portland stands in the position of a surety only for the payment of the assessment. Section 421 of the city charter provides that the contractors doing such work shall be required to rely solely upon the funds accruing from the property benefited, assessed, and liable therefor, and the said contractor shall not require or compel the city of Portland, by any legal process or otherwise, to pay the same out of any funds, except in cases where for any reason such assessment shall be invalid. If A should bring a suit to cancel, as illegal, a contract for the payment of money between B and C, upon which A was liable as surety for B, and for which A's property was subject to payment thereof, it would hardly be contended that A was not an interested party, and not entitled upon a sufficient showing, to be heard in such suit, for the reason that B would pay the debt and thereby render A harmless. It is suggested on the part of defendants that the liability of plaintiff is obviated by virtue of Section 400 of the city charter, which provides for a reassessment for an improvement

when any assessment is declared void or deemed by the council to be doubtful. This provision, however, is for the purpose of correcting matters of procedure, and does not apply where the tax is illegal and void *ab initio*. The records of this court show that several judgments have been rendered in the past against the city of Portland for the expenses of such improvements. We do not think that it should be held as a matter of law that the city will not be required to pay a material portion of the amounts involved in the contracts and thereby increase the municipal taxes of plaintiff, especially in view of an allegation in the complaint directly to the contrary. See *Portland Lumbering & Manufacturing Company* v. *City of East Portland*, 18 Or. 21 (22 Pac. 536: 6 L. R. A. 290); *North Pacific Lumbering & Manufacturing Company* v. *East Portland*, 14 Or. 3 (12 Pac. 4); *Jones* v. *City of Portland*, 35 Or. 512 (58 Pac. 657); *Little* v. *City of Portland*, 26 Or. 235 (37 Pac. 911); *O'Neil* v. *Portland*, 59 Or. 84 (113 Pac. 655).

We think the demurrer to the complaint should have been overruled. The judgment of the lower court will therefore be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.                    REVERSED.