Argued May 7, decided July 1, rehearing denied July 29, 1913.

## JOHNS *v*. CITY OF PENDLETON.

(133 Pac. 817: 134 Pac. 312.)

**Municipal Corporations—Street Improvements—Patented Material.**

1. Though the work of improving a street has to be let to the lowest responsible bidder, and though the council has to designate in advance the character and kind of improvement to be made, it, deeming it best, may provide that it shall be of a certain kind of patented material, the owner of the patent not being the contractor, but furnishing the material to all contractors on the same terms.

**Municipal Corporations—Street Improvements—Notice of Intention—Description.**

2. The description in a notice of intention to improve a portion of a street being indefinite, and incapable of ascertainment from the notice itself, the notice, being jurisdictional, gives no right to assess for the improvement.

**Municipal Corporations — Improvements — Assessments — Restraining Enforcement—Estoppel.**

3. One by waiting till completion of a street improvement is not estopped from enjoining the collection of the assessment therefor.

**Boundaries—Erroneous Description—Conflicting Elements.**

4. Where, in a description of property, there is a discrepancy between courses and distances and monuments mentioned, the monuments must control.

From Umatilla: GILBERT W. PHELPS, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

This is a suit by James Johns against the City of Pendleton to quiet title.

It originated in a dispute as to the validity of an assessment made and a lien claimed by the defendant against two lots owned by plaintiff in order to pay for work done by the Warren Construction Company in paving a portion of Jackson Street with what is called ''Gravel Bitulithic'' pavement.   The pavement is composed of a patented compound, manufactured by the use of special machinery, parts of which are also patented, and the use of the name ''Gravel Bitulithic'' is protected by copyright; the patents and right to use the name being the property of the Warren Bros. Company, a corporation distinct from the Warren Construction Company.   The Warren Bros. Company, the owners of the patent, had placed on file in the office of the recorder in the City of Pendleton the following offer, called a ''license agreement,'' which is as follows:

''To the Honorable Mayor and City Council,
        ''Pendleton, Oregon.
    ''Gentlemen: Inasmuch as it is deemed advisable by the proper authorities that bids be received for the improvement of certain streets in the city of Pendleton, state of Oregon, with the Gravel Bitulithic pavement; and inasmuch as the construction of said pavement requires the use of certain patented processes and compounds; and inasmuch as competitive bidding in the letting of contracts for street improvements is deemed advisable, in order to provide for such competitive bidding, and at the same time secure the adoption of the Gravel Bitulithic pavement as the kind of pavement to be constructed in such streets as may hereafter be determined; the undersigned, Warren Brothers Company, as owner of all patents and processes covering the laying of said Bitulithic pavement, hereby proposes and agrees, for the consideration hereinafter named, to furnish the city of Pendleton or to any bidder, to whom a contract may be

awarded to pave any street or streets in the city of
Pendleton with the Gravel Bitulithic pavement, at any
time within one year from this date, or at any time
thereafter until this proposition is formally. with-
drawn, and who shall enter into a contract with such
surety or sureties as may be required by said city of
Pendleton, the following materials ready for use,
coupled with a free license to use any or all the pat-
ents, trade-marks or trade-names now owned or which
may hereafter be owned by Warren Brothers Com-
pany, necessary to lay said pavement: 1. The neces-
sary roadway mixture for the wearing surface having
a thickness of $1\frac{1}{2}$ inches ($1\frac{1}{2}''$) after compression,
prepared under the patented process of Warren
Brothers Company, and delivered hot in the wagons
of the city or contractor at the Bitulithic mixing plant
located in the city of Pendleton; said plant to be
located within three (3) miles of the work to be per-
formed.   2. The right to use any and all patents, trade-
marks, or trade-names now owned or which may here-
after be owned or controlled by Warren Brothers
Company, which are necessary to be used in the lay-
ing of such pavement.   3. The bituminous flush coat-
ing cement necessary for coating the wearing surface,
delivered on wagons of the city or contractor at the
Bitulithic mixing plant located as above.   4. An ex-
pert, who will give proper advice as to the building
of such pavement, will be furnished to the city or con-
tractor at the expense of Warren Brothers Company.
5. Two daily examinations of the mixture as delivered
on the street will be made at the laboratory of Warren
Brothers Company, to determine if uniformity has
been accomplished in the mixture and construction,
and reports thereof will be made to the proper city
authorities; said samples to be sent, prepaid to the
laboratory of Warren Brothers Company, Potter
street, East Cambridge, Mass., by the city or con-
tractor.   The price at which this service is offered to
any and all contractors who make a bid on the Gravel

Bitulithic pavement, in the city of Pendleton, state of Oregon, is ninety cents ($0.90) per square yard of finished pavement, at which price it is also agreed to furnish the mixture for making all repairs, if any, which may be necessary for the wearing surface during the life of said patents f. o. b. Pendleton in barrels for reheating. The acceptance of bids by your city and the letting of a contract for the same is all that shall be necessary to bind Warren Brothers Company to this agreement.

"Respectfully submitted,
"WARREN BROTHERS COMPANY,
"WALTER B. WARREN,
"Vice-President.

"The above agreement made on the understanding that it applies only to contracts, work on which can be performed continuously, aggregating not less than 10,000 square yards."

It also appeared that it was the custom of the company to allow contractors to put in their own plants or for the company to furnish such plants to contractors who were allowed to manufacture the compound for themselves, paying a royalty of 25 cents per square yard to the Warren Bros. Company. In order to prevent duplication of such plants in small cities, such contractors were obligated to furnish other contractors in the same town not having such machinery the compound at the rate prescribed in the license agreement. The charter of the City of Pendleton contains the following provisions:

"The council, whenever it may deem it expedient, is hereby authorized and empowered to order the whole or any part of the streets of the city to be improved, to determine the character, kind and extent of such improvement, to levy and collect an assessment upon all lots and parcels of land specially benefited by such improvement, to defray the whole or any por-

tion of the cost and expense thereof, and to determine what lands are specially benefited by such improvement and the amount to which each parcel or tract of land is benefited. * * Within ten days from the date of the first publication of the notice required to be published in the preceding section, the owners of 80 per cent or more in area of the property within such assessment district may make and file with the city recorder a written objection or remonstrance against such proposed improvement, and such objections or remonstrance shall be a bar to any further proceedings in the matter of such improvement for a period of six months, unless the owners of one half or more of the property affected as aforesaid shall subsequently petition therefor. * * When the improvement of any street is ordered the recorder, upon instruction from the common council, shall immediately invite proposals for making the same, in accordance with ordinance provided, which proposals shall be opened in the presence of a majority of the common council and the contract awarded to the lowest responsible bidder for either the whole of said improvement or such part thereof as will not materially conflict with the completion of the remainder thereof. * * ''

The Jackson Street improvement required 7,848.80 square yards of paving material. The plaintiff and others remonstrated against the proposed improvement, but did not specify the selection of a patented article as one of the reasons for their remonstrance. Other facts appear in the opinion. There was a decree for defendant, and plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellant there was a brief over the names of *Mr. John P. Winter* and *Johnson & Skrable,* with an oral argument by *Mr. R. R. Johnson.*

For respondents there was a brief over the names of *Mr. Richard W. Montague, Mr. Charles H. Carter* and *Mr. James A. Fee,* with an oral argument by *Mr. Montague.*

Opinion by Mr. Chief Justice McBride.

1. The principal. contention here urged is that the selection of a patented paving compound manufactured by a single company, and exclusively controlled by it, rendered it impossible for any but a single corporation to bid, and that it is therefore inimical to that provision of the city charter of Pendleton which requires all paving contracts to be let to the lowest responsible bidder. The industry of the respective counsel has apparently covered the entire field of judicial utterance upon this question, and has brought to our notice a mass of hopelessly contradictory decisions, all plausible and some profound, indicating by their contrariety the difficulty and nicety of the question involved. On the other hand, it is argued with much show of reason that the selection of a patented article controlled by its owners renders it impossible for any but such owners or favored licensees to bid, and that a call for bids under such circumstances is a mere farce, which tends to promote monopoly, stifle free competition, and impose unnecessary burdens upon the ratepayer. The argument for plaintiff is forcibly put in the language of Mr. Justice Sanderson, in the case of *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699: "To advertise for sealed proposals, where there can be but one bidder, to open them in open session, to examine and publicly declare them, and thereupon award the work to the lowest responsible bidder, where there is and can be but one, to notify the owners of the frontage, if they so elect, to come forward and perform work which by the paramount law of the land

they are prohibited from performing under heavy responsibilities, would be to play as broad a farce as was ever enacted behind the footlights.'' Although, as hereinafter shown, the case there being considered contained many elements of hardship not incident to the case at bar, it shows the attitude of many of the courts in those cases where an exclusive monopoly of a patented article exists. On the contrary, it is argued that the law imposes upon the city council the duty to select in advance the kind of improvement required; that it is its duty to select the best; and that, if the best and most appropriate article for its purposes happens to be a patented article which can be supplied from only one source, the authorities should not be precluded from selecting nor the public from having the best and most appropriate article, and the one which it desires, by reason of the fact that only one person can supply it. This view of the case is forcibly and clearly set forth in the language of Mr. Chief Justice McSHERRY in *Baltimore City* v. *Flack,* 104 Md. 107 (64 Atl. 702), in a case involving the same patent which is the bone of contention in the case at bar. We quote: ''Cities in the construction of public improvements ought to have, as have individuals, in the construction of their own private edifices, the right to select for use the article or substance best fitted and adapted to the purpose; and to deprive the public of the right to select and use such superior articles is opposed to public policy, and positively disadvantageous to the community. 'The force of this argument must of course, be admitted,' said the court in *Fishburn* v. *Chicago,* 171 Ill. 338 (49 N. E. 532, 63 Am. St. Rep. 236, 39 L. R. A. 482), * * and, the answer to it, which is more specious than sound as given by that court, is as follows: 'It is readily seen it is not necessary to foster and create a monopoly, and prevent com-

petition in the letting of public contracts, by providing in ordinances that a certain substance, or article, and no other, shall be used. If it be the judgment of the city council that the most suitable and best material to be used in any contemplated improvement is the product of some particular mine or quarry, or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance, or compound the standard of quality and fitness, and to require that material equal in all respects to it should be employed.' In other words, if the city requires a particular thing and that thing is covered by a patent, or can only be supplied by one dealer, the city must get, not the exact thing it needs, but something else as closely resembling it as can be procured. Thus if the city is in want of certain repairs for its fire-engines and those repairs are made only by one manufacturer, or protected by a patent, they cannot be purchased lest a monopoly would be fostered; but something, not the thing needed, though resembling the thing needed, would have to be substituted.''

The two opinions quoted from fairly set forth the views of the courts in relation to the selection of patented articles where there is no opportunity for competitive bids; but in the case at bar it appears from the testimony that is not excluded that the patentee, the Warren Bros. Company, is not engaged in street work as a business. Its revenues are derived from sales of the manufactured product, from the sale and installation of machinery for such manufacture, and from royalties derived from the manufacture of the product by others. It does not appear from the testimony that there was anything to prevent any contractor who desired to do so from having a plant installed and from manufacturing the compound upon

exactly the same terms that the Warren Construction Company required. Perhaps it would have been unprofitable to have done so, but by the same token it is frequently impractical for a contractor to bid upon a small contract in a town remote from his place of business. When bids are advertised for in any case, the contractor who bids the lowest usually is enabled to do so because he has facilities not possessed by less fortunate bidders. The man situated nearest the place to be improved, having the best equipment, having the best material, and having capital to purchase what the public demands, always has an advantage which enables him in a sense to monopolize contracts of this character.

The law required the city council to designate in advance and in the first instance the "character and kind" of improvement to be made, and it was its duty to choose that which, under all the circumstances, it thought the most suitable. There is nothing to indicate that it acted fraudulently, or that it did not choose the best; and, in the absence of any great number of litigants protesting here, we have the right to assume that a great majority of the ratepayers got what they wanted and are satisfied. It is not shown that anybody else sought to take advantage of the situation by proposing to the Warren Bros. Company to install a plant in Pendleton for the manufacture of gravel bitulithic pavement, nor that anybody ever applied to it to furnish the material to perform the contract in case they should see fit to bid upon it. This is not a case where the patentee of an article is himself a contractor for its use in a particular instance. The evidence discloses no more than that the pavement selected is covered by a patent the benefits of which are available to every contractor upon the same terms. If the use of patented articles, compounds and ma-

chinery are to be excluded from all contracts let to the
lowest bidder, then municipalities are relegated to the
outworn agencies and materials of a past generation,
and are unable to avail themselves of the discoveries
and improvements of the present.    The leading case
cited by plaintiff is *Fishburn* v. *Chicago,* 171 Ill. 336
(49 N. E. 532, 63 Am. St. Rep. 236, 39 L. R. A. 482).
It is not in point in the present controversy, and the
distinction is clearly made in the opinion between those
cases where the article or compound selected is one
composed of materials which may be furnished by a
number of persons, and is unpatented, and a compound
protected by patent.    In that case the ordinance pro-
vided that the "cementing material shall be a paving
cement prepared from refined Trinidad asphaltum
obtained from Pitch Lake, in the island of Trinidad."
The plaintiffs offered proof tending to show that there
were five paving companies in Chicago using Trinidad
asphaltum equal for street paving purposes to that
obtained from Pitch Lake, so that the real question
was not whether the council could select the best ma-
terial, but whether it could arbitrarily designate the
product of a particular locality when products equal in
quality and identical in composition could be obtained
from other localities.    Such a limitation was evidently
fraudulent upon the face of it, and no court could have
upheld it; but, while the court by way of *dictum* dis-
cusses the cases holding that cities may avail them-
selves of the benefit of scientific progress by soliciting
bids for patented compounds and expresses the opinion
that such practice is not sanctioned by the best author-
ity, it recognizes the fact that it is discussing a matter
not in issue in the case before it.    The court says:
"In Mr. Dillon's view these cases are rather overcome
by the current of authority, but, if they should be ac-
cepted as stating the correct rule, they have little

application to the case in hand, for the reason the monopoly created under the ordinance under consideration is not in favor of a patented article.'' The liability of a judge to be absurd when he attempts to decide matters not before him is strikingly illustrated in this case referred to. After admitting the disadvantages of prohibiting a city from designating a patented pavement in its advertisement for bids, even if it is the most suitable, the court suggests, as a remedy, that ''the ordinance might be so framed as to make such production, substance or compound the standard of quality and fitness, and to require that material equal in all respects to it should be employed.''

How, if the patented article is the best and most suitable, another article can be ''equal in all respects to it,'' is not clear; but the hibernicism of the remark is evident. It is needless to marshal and discuss authorities on this question where they disagree so widely. In a general way it may be said that the following cases tend in many respects to support defendant's contention: *Fishburn* v. *City of Chicago,* 171 Ill. 338 (49 N. E. 532, 63 Am. St. Rep. 236, 39 L. R. A. 482); *Siegel* v. *City of Chicago,* 223 Ill. 428 (79 N. E. 280, 7 Ann. Cas. 104); *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699; *Dean* v. *Charlton,* 23 Wis. 590 (99 Am. Dec. 205). These are by no means all of the cases, but they are representative of all. Cases tending to support plaintiff's contention and the views of this court as herein expressed are *Baltimore City* v. *Flack,* 104 Md. 107 (64 Atl. 702); *Hobart* v. *City of Detroit,* 17 Mich. 246 (97 Am. Dec. 185); *Re Dugro,* 50 N. Y. 513; *Baird* v. *New York,* 96 N. Y. 567; *Mayor of Newark* v. *Bonnell,* 57 N. J. Law, 424 (31 Atl. 408); *Yarnold* v. *Lawrence,* 15 Kan. 126. It is assumed that this court has committed itself to the doctrine contended for by plain-

tiff by its decision in *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57) ; but such is not the case.  In that case bids were advertised for improving a street with "Hassam pavement," an unpatented compound. The Hassam Paving Company had copyrighted the trade name, but anybody could use the same ingredients in the same proportions and produce exactly the same pavement without any infringement on the copyright of the Hassam company; but, as the bids called for Hassam pavement, nobody could submit a bid for such pavement *eo nomine* without infringing upon the copyright.  If in that case the call for bids had specified the character of the compound desired by requiring it to contain sand, gravel and cement in the same proportions as contained in the Hassam compound, anyone could have bid.  It was a plain case of preferring one contractor as against others possibly having equal facilities for furnishing the identical material.  We note the following distinctions between that case and this: (1) The Hassam Paving Company was actually engaged as a street contractor in laying pavement composed of its copyrighted compound. The Warren Bros. Company is not so engaged.  (2) The Hassam Paving Company refused to allow other contractors to bid under their trade name.  The Warren Bros. encourage contractors to bid on contracts to be filled by the use of their compound, charging a royalty for its use.  (3) The identical material used in the Hassam compound as called for in the bids could have been furnished under another name or by a description of the material.  It does not appear that such is the case in the present instance.  In the absence of proof to the contrary, we are bound to assume that the council of Pendleton acted in good faith and with good judgment, and that "Gravel Bitulithic" was the best pavement for use on Jackson Street.

It is not shown in this case that any other pavement is equal to gravel bitulithic, that the cost of the pavement was excessive, nor that anybody was prevented from bidding by reason of the fact that the compound was covered by patents. From all that appears the plaintiff has a good pavement, put down at a reasonable price, and has suffered no actual injury by reason of the selection of the pavement in question. He stands simply on the bare technical objection that the selection of a patented compound, as a matter of law, has a tendency to create a monopoly, and that therefore he cannot be compelled to pay for the improvement. It is very evident that the objection now raised is an afterthought, which either did not occur to him before the work was completed or was suppressed. It is also evident that the plaintiff's real objection is not that the council of Pendleton has done something to foster a monopoly, but that it has improved the street at all. In its final analysis plaintiff's contention amounts to this: "The city council may determine the kind of improvement to be made, but must carefully exclude any patented improvement; or it must, at least, make its selection in the alternative." If it were shown that there were other pavements of a similar character and equally as good, the suggestion might have some force; but that fact does not appear in the testimony in this case. It is difficult to see how such a course could prevent favoritism from being shown in the selection of material or in the awarding of contracts. A dishonest council could just as easily select the material specified by a bidder whom it wished to favor after the bids were in as it could before they were called for. Suppose the council had called for bids for half a dozen different kinds of pavement retaining the right to select that one which in its judgment was the best. It is plain that, if it were so

disposed, it could have selected gravel bitulithic, and the plaintiff would have been without remedy. In this contention we are conceding for the purposes of the argument, without so deciding, that such alternative notice would comply with the terms of the charter, which required the council to determine in advance of the notice for bids the kind and character of the improvement. There has been no device yet invented that is sufficient to make a dishonest official act honestly; the remedy is at the polls. In these days when the light of publicity is thrown upon every act of a councilman, when the jail doors yawn before the grafting official, and the recall hovers over him, there is not that temptation for him to ply his vocation that there has been heretofore. In this particular case there is no charge made of intentional fraud on the part of the council. They complied with the letter of the law, and, as we believe, with the spirit of it. Whether they exercised the very best judgment is not for us to say.

2, 3. Another objection is that the notice of intention to improve does not describe definitely the portion of the street to be improved. The description in the ordinance and notice is as follows:

"Commencing on the south line of Jackson Street and the southerly projected west line of Main Street, thence north to the northeast corner of lot 6, block 7, Switzler's Addition to the City of Pendleton, Oregon, thence west to the northwest corner of said lot 6, thence north to the northeast corner of lot 9, in said block 7, thence westerly parallel with the north line of Jackson Street to the northwest corner of lot 4, block 6, Livermore's Addition, thence south to the northeast corner of lot 7, in said block 6, thence west to the northwest corner of said lot 7, thence south to the southwest corner of lot 12, block 16, in Raley's Addition, Pendleton, Oregon; thence east to the southeast

corner of said lot 12, thence south to the southwest corner of lot 3 in said block 16, thence easterly parallel to the north line of Jackson Street to a point on the west line of the property deeded to the City of Pendleton for cemetery purposes, which point is south of a point on the section line, 19.50 chains east of the $\frac{1}{4}$ section corner between sections 3 and 10, township 2 north, range 32 E. W. M. (variation 23 degrees E.), thence south to a point 9.50 chains south of the said section line, thence east 2.50 chains, thence north to the south line of lot 3, block 1, in said Raley's Addition, thence east to a point 230 feet due south of the southwest corner of lot 7, block 6, in said Switzler's Addition; thence east 100 feet parallel with said section line, thence south 64 feet more or less to the north line of land formerly owned by the Pendleton Manufacturing Company, thence northeast along the north boundary of said land formerly owned by the said Pendleton Manufacturing Company, to the said section line, thence along said section line west to place of beginning."

There is a discrepancy in the description arising from the fact that block C, Livermore's Addition, is wrongly designated as "block 6." All the monuments called for in block 6 as they appear in the ordinance and notice exist in block 6, and the courses called for also correspond; but, as no distances are given, we cannot reverse the description beginning at the last call and retrace it so as to make the calls certain, especially since there is a block 6 in Livermore's Addition. The description is uncertain, and cannot be ascertained from the notice itself. The notice does not refer to any map or plat of the assessment district on file, and the one actually on file is not complete in some particulars. The notice of intention to improve is jurisdictional, and the city gained no right to make the assessment against plaintiff's property. The whole

proceeding was void.  As held by this court in several cases, plaintiff is not estopped from enjoining the collection of the assessment by reason of having waited until the completion of the improvement: Dillon, Mun. Corp., § 1455; *Ladd* v. *Spencer,* 23 Or. 193 (31 Pac. 474).

The decree will be reversed and one entered here in accordance with this opinion.

REVERSED : DECREE RENDERED.

Denied July 29, 1913.

ON PETITION FOR REHEARING.

(134 Pac. 312.)

MR. JUSTICE EAKIN delivered the opinion of the court.

Defendant petitions for rehearing in this case, assigning as error the decision of the court in holding the description of the assessment district is so uncertain that the true north boundary cannot be ascertained from the evidence.  The rule is that where, in a description of property, there is a discrepancy between courses and distances and the monuments mentioned, the monuments must control.  In this case the northwest corner of lot 4, block 6, Livermore's Addition, is mentioned as a monument, which conflicts quite radically with the courses.  No distances are given.  Also we find from the record that to treat the description "block 6" as a clerical mistake, and as intended for "block C," would not remedy all of the results of the alleged error.  We find that the reference to block 6 runs through the entire record.  The city engineer, on September 4, 1912, at the request of the council, prepared a statement of the lots to be benefited by the improvement, and the percentage of the cost to be assessed to each.  In such statement he assesses to lot

5, block 6, Livermore's Addition, $29.65; to lot 5, same block, $25.65; to lot 6, same block, $410.90; to lot 7, same block, $222.30—including no assessment against any lots in block C. On September 11, 1912, following the recommendation of the engineer, the council, by resolution, created assessment district No. 19, as liable for the expense of the improvement, by defining the boundaries thereof; the north boundary, from the northeast corner of lot 9, block 7, Switzler's Addition, being: "Thence westerly, parallel with the north line of Jackson Street, to the northwest corner of lot 4, block 6, Livermore's Addition; thence south, to the northeast corner of lot 7, in block 6; thence west, to the northwest corner of said lot 7; thence south, to the southwest corner of lot 12, block 16, in Raley's Addition." On September 12, 1912, the city recorder published the notice in the language above quoted, and the council adopted the assessment as recommended by the engineer. If we were to treat this as a clerical error in the boundaries of the district, the city would not be benefited, unless we corrected the assessment also by eliminating the assessment of the lots in block 6 and assessing the lots in block C, which without correction affects the validity of the whole assessment. We might from the record select the lots that were intended to be included in the district, but we cannot do so without doing violence to the record.

The petition is denied.

Reversed: Decree Rendered: Rehearing Denied.