Argued September 10, affirmed September 28, rehearing denied October 19, 1915.

## TEMPLE v. PORTLAND.*

(151 Pac. 724.)

Municipal Corporations—Public Improvements—Pavements.

1. Where the patentee offers to all bidders alike the right to make use of the patented article upon reasonable terms, there is no objection to specifying a patented pavement.

Municipal Corporations—Public Improvements—Patented Pavements.

2. The Portland City Charter (Sp. Laws 1903, p. 3), empowering the council to order a street to be improved, authorizes it to determine the character, kind, and extent of such improvement. Other sections provide for the preparation of plans, authorize remonstrances, and declare that such contract shall be let to the lowest responsible bid-

---

*As to validity of contract for material patented or held in monopoly where a letting to the lowest bidder is required, see note in 46 L. R. A. (N. S.) 990.                    REPORTER.

der for either the whole of such improvement or part. The city council selected a patented pavement to be used on an improvement, and the contract provided that the contractor should also lay the sidewalks. The holder of the letters patent made no provision for other bidders using the patented pavement, and only the one bid was secured. *Held* that, in view of the fact that sidewalks wholly unconnected with the patented pavement were included in the contract, the acts of the council were void under the charter, because stifling competition.

Patents—Exclusive Rights—Constitution.

3. A holding that a city could not specify and make a patented pavement alone acceptable for a public improvement does not violate the patentee's constitutional right to have the exclusive right to manufacture and sell the patented article.

Municipal Corporations—Assessments—Objections—Estoppel.

4. That some of the plaintiffs petitioned for a patented pavement, the improvement to be made in conformity with the charter does not estop them from attacking the assessment on the ground that the resolution, by solely specifying the patented pavement, violated the charter provisions for competition.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.   Statement by MR. JUSTICE HARRIS.

Alfred O. Temple and 62 other property owners commenced this suit for the purpose of enjoining the authorities of the City of Portland from levying or collecting assessments to pay for a street improvement. On October 14, 1909, 6 of the plaintiffs herein and 12 others filed a petition for the improvement of Lombard Street, from the west line of Westanna Street to the east line of Wabash Avenue, in the City of Portland, by grading the street to the established grade and paving with Hassam pavement "in conformity with the charter, ordinances, and regulations of the said City of Portland." The council directed the city engineer to prepare plans and specifications for an appropriate improvement and to estimate the probable cost of the work, and thereafter the city engineer prepared and filed plans and specifications for the improvement, together with an estimate of the

amounts of the different kinds of work required to be done. The specifications stated that:

"The improvement shall consist of grading the street to the proper subgrade, paving the roadway with Hassam, constructing artificial stone sidewalks and curbs, laying vitrified, cast iron, and corrugated drain-pipe, wood headers, and inlets. * * The entire width of such right of way shall then be improved with Hassam."

The council adopted a resolution reciting an intention to make the street improvement, and approving the plans, specifications, and estimates of the city engineer. This resolution was published in the city official newspaper and posted at each end of the proposed improvement, and notice was given that remonstrances might be filed within 20 days from the date of the first · publication of the notice. No remonstrance having been filed, the council passed an ordinance providing for the improvement of the street. The ordinance enacts that the roadway of the street shall be paved with Hassam pavement; that artificial stone sidewalks and curbs shall be constructed; that vitrified, cast iron, galvanized, and corrugated galvanized pipe and wood headers shall be laid; and that inlets and outlets shall be constructed. Having been notified of the passage of the ordinance, the executive board caused the auditor to publish notices calling for bids. The published notices informed all bidders that:

"The contract for the improvement of the above-named street will be awarded to the lowest responsible bidder for the whole of the improvement."

A contract for the improvement was made with the Oregon Hassam Paving Company, a corporation, which was the sole bidder. The contract was made

on the unit basis, the contractor agreeing to lay Hassam pavement at $1.85 per square yard and do the other work for a specified sum per cubic yard or square foot or lineal foot. After publication of the required notice, the executive board on August 11, 1911, accepted the work performed by the Oregon Hassam Paving Company; and thereafter the council proceeded to levy assessments, to the amount of the cost of the improvement, upon the property specially benefited. The trial court decreed that the acts of the council and executive board were void, and enjoined the city from making the cost of the improvement a charge against the properties of the plaintiffs, "except as to such plaintiffs as have voluntarily bonded their property for said improvement, or have voluntarily agreed to pay an assessment for said improvement, provided that nothing in this decree shall be construed to prevent the city from exercising whatever power of reassessment it may have." The defendant appealed.        AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

For respondents there was a brief over the names of *Mr. R. F. Peters, Mr. Charles H. Abercrombie* and *Mr. R. F. Hunt,* with an oral argument by *Mr. Peters.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The plaintiffs argue that the acts of the city were void, because the council in advance selected Hassam as the kind of pavement to be laid, thereby eliminat-

ing the possibility of competition. It has already
been determined that there can be no objection to
specifying a patented pavement, where the patentee
offers to all bidders alike the right to make use of the
patented article upon reasonable terms: *Johns* v. *City
of Pendleton*, 66 Or. 182 (133 Pac: 817, 134 Pac. 312,
Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990); *Sher-
rett* v. *City of Portland*, 75 Or. 449 (147 Pac. 386).
Hitherto it has not been necessary to decide the ques-
tion of whether or not a municipality may legally
specify a patented pavement, make it alone acceptable
for a proposed street improvement, and then call for
bids when no one except the patentee is in a position
to make a proposal for the work; but we have now
reached the point where this court must follow the
way marked out in *Hobart* v. *Detroit*, 17 Mich. 246 (97
Am. Dec. 185), or adopt the rule promulgated in *Dean*
v. *Charlton*, 23 Wis. 590 (99 Am. Dec. 205).

2. It is necessary to give some attention to the
municipal charter: Sp. Laws 1903, p. 3. The council
is empowered to order a street to be improved, "to
determine the character, kind, and extent of such im-
provement," and to levy assessments upon land
specially benefited by the improvement: Section 374.
If the council deems it necessary to improve a street,
it must require the city engineer to prepare plans and
specifications and to estimate the amount and probable
cost of the work. If the plans, specifications and
estimates of the engineer are approved, the council
declares its intention to make the improvement, notice
of which is required to be given: Section 375. Op-
portunity to remonstrate is afforded: Section 377. If
a sufficient remonstrance is not filed, "the council shall
be deemed to have acquired jurisdiction to order the
improvement to be made," and the council may within

a specified time, "by ordinance, provide for making said improvement, which shall conform in all particulars to the plans and specifications previously adopted": Section 378. The estimates, plans, specifications and a copy of the ordinance are then presented to the executive board, which body has the power to award the contract for the improvement; but "such contract or contracts shall be let to the lowest responsible bidder for either the whole of said improvement or such part thereof as will not materially conflict with the completion of the remainder thereof," and the board shall have the right to reject any or all proposals received: Section 379.

It will be remembered that the council first selected Hassam pavement and that the notice for bids called for proposals on the improvement as a whole. While the composition generally known as concrete pavement contains the identical ingredients found in Hassam pavement, it is asserted that the process employed for laying the latter is protected by letters patent. The Oregon Hassam Paving Company claimed and exercised the exclusive right to lay Hassam pavement, and did not offer to permit any other person to make use of the Hassam process. The Oregon Hassam Paving Company was the sole bidder and received the contract. The answer expressly admits that:

"There is now, and for many years last past has been, in use in the City of Portland, and laid and constructed therein, several other kinds and classes of pavement, which are equally durable, and in some respects equally good, as the pavement specified in the foregoing proceedings, and that as to some of such kinds and classes of pavement there is and may be open, free and full competition, and that persons, companies, and corporations engaged in street improvement work may contract for and obtain in an open

market all of the necessary materials for the making of the same."

The situation presented here is one where the pavement laid was designated by name, and the kind named was alone made acceptable; there was no chance for competition, because the right to lay the kind of pavement specified was exercised exclusively by the Oregon Hassam Paving Company, which was the only bidder; and all persons were notified that proposals to do the work must cover the improvement as a whole, notwithstanding the fact that a substantial part of the improvement was in no way connected with or a part of the patented pavement. There was no opportunity for competition. There are two rules: One is known as the Wisconsin rule, as found in *Dean* v. *Charlton,* 23 Wis. 590 (99 Am. Dec. 205), while *Hobart* v. *Detroit,* 17 Mich. 246 (97 Am. Dec. 185), exemplifies the Michigan doctrine. So much has been said for and against the two conflicting rules that nothing can be added to what already has been said. Under the Wisconsin rule, where its charter requires the letting of a contract to the lowest responsible bidder, a municipality is without authority to specify any patented pavement as the only one to be used in a street improvement, because to do so would completely eliminate competition, foster monopoly and promote favoritism. The conclusion reached in *Dean* v. *Charlton,* 23 Wis. 590 (99 Am. Dec. 205), has been approved by the following cases: *State* v. *Elizabeth,* 35 N. J. Law, 351; *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699; *Fishburn* v. *Chicago,* 171 Ill. 338 (49 N. S. 532, 63 Am. St. Rep. 236, 39 L. R. A. 482); *Burgess* v. *Jefferson,* 21 La. Ann. 143; *Fineran* v. *Central Bitulithic Paving Co.,* 116 Ky. 495 (76 S. W. 415, 3 Ann. Cas.

741); *Monaghan* v. *Indianapolis,* 37 Ind. App. 424 (75 N. E. 424). The Michigan doctrine sustains the right to previously select a patented pavement and then to call for bids, and *Hobart* v. *Detroit,* 17 Mich. 246 (97 Am. Dec. 185), has been strongly indorsed in other jurisdictions: *Barber Asphalt Co.* v. *Hunt,* 100 Mo. 22 (13 S. W. 98, 18 Am. St. Rep. 530, 8 L. R. A. 110); *In re Dugro,* 50 N. Y. 513; *Newark* v. *Bonnell,* 57 N. J. Law, 424 (31 Atl. 408, 51 Am. St. Rep. 609); *Bye* v. *Atlantic City,* 73 N. J. Law, 402 (64 Atl. 1056); *Ryan* v. *Paterson,* 66 N. J. Law, 533 (49 Atl. 587); *Saunders* v. *Iowa City,* 134 Iowa, 132 (111 N. W. 529, 9 L. R. A. (N. S.) 392); *Yarnold* v. *Lawrence,* 15 Kan. 126; *Holbrook* v. *Toledo,* 28 Ohio C. C. 284; *Silsby Mfg. Co.* v. *Allentown,* 153 Pa. 319 (26 Atl. 646).

It is argued that Section 374 of the charter empowers the council to specify and call for bids upon a patented pavement to the exclusion of all others, because by the terms of that section the council is authorized "to determine the character, kind and extent" of a proposed improvement; but the quoted language must be read in the light of the remaining charter provisions. The charter must be construed as a whole, and when so interpreted it is clear that it was not intended that competition should be throttled; but, on the contrary, Section 379, making it the imperative duty of the executive board to let a contract to the lowest responsible bidder, necessarily implied that there shall be opportunity for competition, so that the public will gain all the benefits which are naturally and necessarily produced by strife for business; and since the charter does prescribe a mode for the exercise of the power, the mode becomes the measure of the power: *Terwilliger Land Co.* v. *City of Portland,* 62 Or. 101 (123 Pac. 57). The municipality is not

necessarily deprived of the right to make use of a patented pavement. It is common knowledge that it is the practice in more than one city so to frame the specifications as to enable different kinds of pavements to compete with each other. There is no hesitancy in fixing upon the Wisconsin rule as the one to be applied in this and analogous cases in this jurisdiction, when it is remembered that, regardless of the force of the arguments, when considered in connection with the mere theories of the Michigan doctrine or of the Wisconsin rule, the practical result of opening the doors to competition for all public improvements has been to the marked advantage of the public; and, moreover, the citizens of a municipality can generally adjust their charter to suit their wishes, because under the present form of our Constitution they are not dependent upon the will of the legislature, but have it within their own power to enact or amend their charter.

In the instant case a considerable and substantial portion of the improvement could have been segregated from the Hassam pavement. It must, of course, be admitted that the proper laying of the pavement depended upon the manner in which the subgrade was prepared, and consequently all the work necessarily preparatory for laying Hassam was for all practical purposes connected with laying the pavement; but the sidewalks could have been constructed separate and apart from the pavement. It is true that the testimony shows that experience has demonstrated that better results generally have been obtained where the contract for the entire improvement has been let to one person; and it is also true that the charter permits the executive board to let a contract to a bidder for the whole or a part of the improvement. The Oregon

Hassam Paving Company possessed a monopoly on Hassam pavement, but it was a monopoly which was legalized and sanctioned by letters patent. No person had the exclusive right to lay the sidewalks, and yet the notice for bids tied up a considerable portion of the work, which was not patented, to the remaining part of the improvement, which was patented, and by so doing a monopoly was given to the Oregon Hassam Paving Company, not only on the patented portion, but also on the nonpatented part, of the proposed improvement. The method employed would be obnoxious, even in those jurisdictions where the Michigan rule is followed. In the *Matter of the Petitions of Laura E. Eager,* 46 N. Y. 100, the court says:

"Even if we should hold that patented articles may be contracted for by the city, notwithstanding the impossibility of competition, we ought to stop there, and not go to the length of sanctioning a practice whereby competition may be prevented, by unnecessarily coupling a work not patented with one which is patented, and advertising for an entire proposal for the whole."

3. It is also contended by the city that an interpretation of the charter which would cause the charter to prohibit the city from specifying and making a patented pavement alone acceptable would be in conflict with the federal Constitution. The exclusive right of the patentee to the invention covered by his letters patent is still recognized, and he is not prevented from offering his wares for sale. Letters patent do not confer upon the patentee the right to prevent other persons from offering their wares for sale, where there is no infringement, and yet such would be the result if the argument of defendant is pursued to its logical conclusion.

4. The mere fact that 6 of the 63 plaintiffs signed a petition for Hassam pavement will not bar all the plaintiffs from maintaining this suit. Moreover, the petition did not authorize a violation of the charter, but, on the contrary, it asked that the improvement be done "in conformity with the charter." The council did not follow the mode prescribed by the charter. The mode measured the power, and the plaintiffs did not take part in any transaction which would work an estoppel: *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57). If Hassam is a mere trade name, the charter was infringed upon; and the charter was likewise violated if Hassam is in fact protected by letters patent.

The decree is affirmed.

AFFIRMED.    REHEARING DENIED.

---

Application to stay execution pending appeal allowed July 31, 1914. Argued on the merits September 17, affirmed September 28, rehearing denied October 19, 1915.