(87 Misc. Rep. 216)

### WHITMORE, RAUBER & VICINUS v. EDGERTON et al.

(Supreme Court, Equity Term, Monroe County. October 19, 1914.)

1. MUNICIPAL CORPORATIONS (§ 330*)—STREET IMPROVEMENTS—COMPETITIVE BIDDING.

   The fact that a street is directed to be paved with a patented article does not necessarily prevent competitive bidding.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 854, 855; Dec. Dig. § 330.*]

2. MUNICIPAL CORPORATIONS (§ 330*)—PUBLIC IMPROVEMENTS—COMPETITIVE BIDDING.

   Where a city charter authorized property owners petitioning for street paving to specify the material desired, but not the particular make, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

authorized a majority of them to select the kind desired among those provided for by ordinance, the designation of a patented pavement, which merely consisted of a top layer, was not improper, as preventing competitive bidding, where the patentee offered to sell such article at a stipulated price, and the patented part of the pavement constituted only a small part of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 854, 855; Dec. Dig. § 330.*]

3. MUNICIPAL CORPORATIONS (§ 323*) — PUBLIC IMPROVEMENTS — RIGHTS OF TAXPAYERS.

A taxpayer, who is assessed for a public improvement, has sufficient interest to maintain an action to enjoin the letting of a contract, on the ground that the council had no authority to provide for pavement of the kind specified, because it prevented competitive bidding.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 842–846; Dec. Dig. § 323.*]

Action by Whitmore, Rauber & Vicinus against Hiram H. Edgerton, individually and as Mayor of the City of Rochester, and others. Judgment for defendants.

McInerney & Bechtold, of Rochester, for plaintiff.

William W. Webb, Corp. Counsel, of Rochester, for defendant Edgerton.

Edward Harris, of Rochester, for certain defendants.

J. M. Head, of Boston, Mass., for defendant Holohan.

CLARK, J.   This is a taxpayer's action, in which plaintiff seeks an injunction restraining the city of Rochester and the defendant Holohan from executing a contract for a street improvement in Rochester, on the ground that the common council had no power to pass an ordinance for a pavement of the kind indicated in the proposed contract.

In 1910 the common council of the city of Rochester adopted a general ordinance with reference to pavements in that city, and indicated that the following different kinds of pavements could be constructed in the city of Rochester, to wit:

"Medina block stone pavement."
"Brick pavement."
"Sheet asphalt pavement."
"Trap rock macadam pavement."
"Creosoted wood block pavement."
"Bitulithic pavement."

And the ordinance says that this bitulithic pavement—

"shall consist of a surface of at least two inches of what is known as bitulithic top surface, laid either on a concrete or broken stone foundation, as may be specified in the bidding sheet."

Section 115 of the charter of the city of Rochester reads as follows:

"Petitions for Pavements.—Any five or more property owners, liable to be assessed for the cost of paving or repaving a public street, highway or place, may, before the passage of the final ordinance, present to the common council a petition specifying the material desired to be used in constructing such pavement, but may not specify therein the particular kind, make, style or brand of material desired. The common council must in the final ordinance or by separate resolution or resolutions passed not later than the final ordi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nance, specify each material for which a petition has been presented, if any, and such other material or materials as it deems desirable, but not any particular kind, make, style or brand of material, as those proposed to be used in constructing the pavement."

Section 230 of the charter of the city of Rochester provides as follows:

"Designation of Kind of Pavement.—A majority of the property owners liable to be assessed for the cost of paving or repaving a public street, highway or place, owning not less than two-fifths of the feet front of property, ex-. clusive of city property, fronting the public street, highway or place to be paved or repaved, as appears by the record of the assessors, may at any time within one week after the ordinance for the improvement takes effect, present to the board of contract and supply a petition or other writing designating one of the materials specified by the common council as the material to be used in constructing the pavement, but may not designate therein any particular kind, make, style or brand of material.  *    *    * "

Culver Road is a street in the city of Rochester, and on the 27th day of June, 1914, a petition was presented to the common council, signed by a majority of the property owners residing on said street, praying that the same might be paved from East avenue to the foot of the approach to the canal bridge at Harvard street, said petition praying that the street might be improved by paving with bitulithic. Consequently the common council designated bitulithic as the kind of pavement to be used in paving said street; a majority of the property owners designating that material for said improvement.

The common council thereupon published a notice to contractors to submit sealed proposals for said improvements, specifying that Culver Road was to be improved with bitulithic pavement. In response to that notice several bids were submitted, including one from the plaintiff; but in submitting its bid plaintiff did not confine itself to the specifications adopted by the city authorities, and on which they called for bids, but based its bid on an asphalt stone mixture pavement, and assigned the reason why the bid was not for bitulithic, as required by the specifications, that that was a patented article.

[1, 2] The adoption of specifications for a patent pavement does not prevent competitive bidding, and that proposition has been decided many times and in different states. Holmes v. Council of Detroit, 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. Rep. 587; Baird v. Mayor, 96 N. Y. 567; Silsby Mfg. Co. v. Allentown, 153 Pa. 319, 26 Atl. 646.

The plaintiff having submitted a bid for a pavement quite different from that which the property owners, who were to pay for it, and the city authorities, desired to be laid, as particularly mentioned in the specifications, put itself in a position where its bid was rejected as being informal, and the defendant Holohan, being the lowest bidder under the specifications adopted by the city authorities, was awarded the contract, and plaintiff in this action seeks to prevent the execution of that contract, claiming that the city authorities and property owners had no right to specify the bitulithic pavement.

There is nothing in the charter of the city of Rochester which prohibits the common council from adopting bitulithic pavement for a

street improvement, if that was desirable; and there is nothing in the charter which would preclude property owners from designating bitulithic, if that was the pavement which seemed to them to be the most desirable; and there is likewise nothing in the charter of the city of Rochester which prohibits the authorities from using for such an improvement a patented article.

It appears that this bitulithic pavement is patented, or at least the process by which it is manufactured is patented, and the owners of the patent, Warren Bros. Company, submitted a bid under the specifications adopted by the city authorities, and they opened the way for competitive bidding, for they offered the use of their patented product to any contractor, who desired to bid on the contract as a whole for the proposed improvement, at a fixed price.

It must be understood that this bitulithic substance is merely a two-inch coating, or top dressing, and forms a very small portion of the entire pavement. The contractors were obliged to use bitulithic for this top dressing, but as to the remainder of the work—the excavations, foundations, curbing, gutters, catch-basins, and the large element of labor—there was no restriction of any kind imposed in the specifications, and contractors had a right to purchase these other commodities wherever they chose, for there was nothing in the specifications which required them to get these materials from any particular contractor or manufacturer.

The real question to be determined here, under the terms of these specifications is: Was there an opportunity for competitive bidding? A fair interpretation of the terms of the city charter under consideration would seem to indicate that it was the intention to prevent a majority of the property owners, or the common council, from creating a monopoly by designating the brand of the principal materials selected for such an improvement; but, if, under the specifications as a whole, competitive bidding is permissible, at the same time reserving to the property owners the right to select a material (but not the particular kind) with which the street was to be improved, neither the letter nor the spirit of the statute has been violated.

In this case one of the articles to be used in making the proposed pavement was a patented article; but that had reference merely to the two-inch top coating, and the owners of that patent, themselves bidders for this work, distinctly released their claims under the patent in favor of any person who succeeded in obtaining the contract, agreeing to sell the product which was desired by the property owners and the city authorities at a fixed price. Under the circumstances there could be and there was competitive bidding, and that is shown by the fact that several bids were received for this improvement under the specifications adopted by the city authorities, among the bidders being the owners of this patent, and they were not the lowest bidder; but defendant Holohan was, and he was awarded the contract.

If plaintiff had submitted its proposition under the specifications adopted by the city authorities, and had been the lowest bidder, it would have undoubtedly received the contract; but it, having submitted its proposition for an entirely different kind of pavement than that

desired by the property owners, who were to pay for it, and the city authorities, is hardly in a position now to complain because its bid was rejected as being informal.

A careful reading of the sections of the city charter which are under consideration requires the interpretation that it was the intention to allow a majority of the property owners liable to be assessed for the improvements, who owned two-fifths of the feet front, to select the material or kind of pavement to be laid in front of their property, and for the common council to adopt plans and specifications for the proposed improvement the property owners desired, and to invite proposals for such pavement, awarding the contract to the lowest bidder for the kind of pavement designated. I cannot see where there was any violation of the statute in the action of the authorities in this case.

Of all the cases cited by counsel on either side, the case of Union Paving Co. v. Board of Contract, 74 Misc. Rep. 646, 134 N. Y. Supp. 740, seems to come the nearest to the point in controversy here, and there it was squarely held that bitulithic is a kind of pavement in and of itself, as distinguished from a sheet asphalt pavement, and is not merely a different make, style, or brand of the same kind.

Numerous cases are cited by the learned counsel for plaintiff, but a careful reading of them shows that they are distinguishable from the case at bar. In these cases there seemed to be a purpose to create a monopoly, by specifying that the material to be used be manufactured by particular factories or persons, whereas it was shown that other persons or factories could produce a similar article which was just as good as the designated brand, but in these cases no patented article was specified. Here bitulithic was specified; but that is a patented article, and there was no purpose on the part of either the property owners or the city authorities to designate in advance to whom the contract was to be awarded, and in this case the owner of the patented article relinquished whatever rights it had under the patent for this particular work, and offered the article to any contractor who received the contract for the entire work at a fixed price, so that any number of contractors who might submit bids for the work specified could do so, knowing in advance that they would be able to procure the bitulithic specified of the manufacturers at a fixed price; but as to other articles which were necessary to make up the proposed pavement they were at liberty to purchase their supplies wherever they could make the best terms.

In this case there was no fraud or deceit practiced, and there is no claim made that fraud entered into the transaction. The owner of the patent for bitulithic submitted a bid under the specifications adopted by the city authorities, and several other contractors submitted bids, and Holohan was the lowest bidder, and was awarded the contract, and it would seem that that bare statement of fact which has been established in this case was the single and sufficient reason why it should be held that the principle of competitive bidding was preserved in this entire transaction, and consequently there was no violation of either the letter or spirit of the city charter.

This bitulithic pavement, which was desired by the property owners,

who were to pay for the improvement, and which was adopted by the city authorities, and for the construction of which they invited bids, is a kind of product or pavement covered by perfectly valid letters patent. It is not merely a certain make, style, or brand of material, and in adopting bitulithic pavement for the improvement in question the principle of competitive bidding was not destroyed, but was distinctly preserved in this transaction, as is shown by the fact that there were a number of bids submitted in good faith, and the contract was awarded to the lowest bidder, even as against the owner of the patented article.

[3] The plaintiff is a taxpayer, and had a perfect right to bring this action, and the fact that it was an unsuccessful bidder, because its bid was not submitted under the specifications adopted by the common council, is of no importance here, and is immaterial; but I am convinced that the entire proceeding, from the time of the petition for the improvements by the property owners on Culver Road, right down through the various steps taken by the city authorities, was regular in every way, and the rights of no citizen or taxpayer were violated, and the principle of competitive bidding was preserved, and there is no good reason why the contract with the lowest bidder should not be executed and carried out.·

Judgment is therefore directed in favor of defendants, vacating the stay heretofore granted, and dismissing the complaint, with costs.