## No. 10,636.

### SANBORN, ET AL. v. CITY OF BOULDER, ET AL.

Decided December 3, 1923. Rehearing denied January 7, 1924.

Action to enjoin municipal improvements.   Judgment of dismissal.

### *Affirmed.*

1. MUNICIPAL CORPORATIONS—*Ordinances—Emergency Clause.* An invalid emergency clause does not make an ordinance void, but simply postpones the time when it shall take effect.

2. APPEAL AND ERROR—*Decree—Effect.* Parties are bound by unfavorable, as well as by favorable parts of a decree which they have invoked.

3. MUNICIPAL CORPORATIONS—*Ordinances—Preliminary Proceedings.* A city council having passed a defective ordinance, it is held that it had the right to subsequently reintroduce it with the objectionable feature eliminated, without beginning over again the preliminary proceedings.

4. *Ordinance, Uncompleted—Adjournment.* There being no provisions prohibiting such procedure, the fact that a city council adjourned sine die before completing the consideration of a proposed ordinance, was no bar to further action thereon at a subsequent regular meeting.

5. *City Council—Legislative Powers.* At a regular meeting of a city council, all legislative acts which are within its jurisdiction may be performed.

6. *Ordinances—Insufficient—Validation.* An ordinance that is merely insufficient or defective, which is within the scope of the municipal powers to pass, may be validated, as well as the proceedings taken thereunder, by subsequent appropriate action.

7. *Special Improvements—Patented Paving—Bidding.* Where the owner of patented pavement files with the city council an agreement to furnish the article to all persons upon the same terms and cost, and is not a bidder for the work, specification by the council for the use of the article is not repugnant to an ordinance requiring competitive bidding.

8.      *Special Improvements—Contracts—Discretion.* The awarding
        of contracts for different parts of street paving, or a contract
        for the complete project, is discretionary with the city council,
        and courts will not interfere with that discretion where no
        abuse is shown.

9.      *Special Improvements—Bonds.* Under the provisions of the
        municipal charter under consideration, it is held that munici-
        pal bonds for public improvements payable only out of money
        derived from assessments upon ·the property affected, could-
        be issued withóut the approval of the taxpayers.

10.     *Special Improvements—Constitution—Indebtedness.* Article
        11, section ·8, of the Colorado Constitution concerning indebt-
        edness of municipalities, has no application to improvement dis-
        trict bonds payable only out of assessments levied upon .the
        property affected.

*Error to the District Court of Boulder County, Hon. George
H. Bradfield, Judge.*

Mr. JOHN R. WOLFF, for plaintiffs in error.

Mr. FRANK L. MOORHEAD, Messrs. MARTIN, NEWCOMER,
FITZGERALD & TINGLOFF, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THIS is a writ of error to review a decree dismissing the
plaintiffs' action in equity, whose object was to enjoin the
municipal authorities of the city of Boulder from enforcing
an alleged void city ordinance, purporting to create a pav-
ing improvement district. The city of Boulder is a special
charter city whose organic law was adopted by its qualified
electors under permission of the Twentieth Amendment to
our state Constitution. This Court has repeatedly held
that, with respect to purely local matters, the legislative
power of these special charter cities is, with exceptions not
material here, as comprehensive as that of our General
Assembly over municipalities organized under the general
statutes. The charter of the city of Boulder confers upon

that municipality the power to create public improvement districts, either under the provisions of the state statutes applying to such districts, or under such provisions as may be provided by charter, or as the council may by ordinance adopt. The city council of Boulder has seen fit not to avail itself of the power to create these districts under the general statutes, but has elected to provide, and has provided, by general ordinance the method of procedure in such cases. Thereby the city council, upon its own initiative, or upon the written request of a majority of the owners of the frontage to be assessed therein, may create improvement districts, including the paving of its streets and alleys. The method of procedure under general ordinance No. 804 is the same, whether the request for the improvement is made by the frontage owners or is at the instance of the city council itself. It is not necessary to summarize the procedure as plaintiffs concede, at least do not deny, that the city has strictly observed, and conformed to, all the preliminary requirements of the general procedure ordinance, down to July 18, 1922, when the city council took up for consideration the proposed ordinance for creating the improvement district. This was the day fixed by the city council for hearing protests and objections by any person interested. On this day complaints and objections by the property owners, including plaintiffs, theretofore filed by the frontage owners, were duly heard and were all overruled. The city council then took up for consideration the proposed ordinance No. 975 for creating the district and assumed to adopt the same in accordance with its prescribed rules. The ordinance contained an emergency section. If it was an emergency ordinance and was properly passed, then, under sections 17 and 18 of the charter, it took effect on the day of its adoption, but if it was not an emergency ordinance or properly passed as such, it did not take effect, if at all, until thirty days after final passage. Upon the adoption of this creating ordinance on July 18, the city council, having declared it properly passed, proposed to enforce it by advertising for bids and entering in-

to a contract to be let upon competitive bidding for the work of paving, and to issue bonds for the purpose of paying for the improvements, and, at the appropriate time, for passing an assessing ordinance.  Before the ordinance could be enforced, these plaintiffs brought an action in the district court of Boulder county to restrain the municipal authorities from enforcing it.  A preliminary restraining order was issued, which afterwards, on final hearing, was made permanent.  Four days after the final decree was rendered, the city council, at a regular meeting, introduced a new ordinance, No. 976, which is identical with Ordinance No. 975, except that the emergency clause is omitted and in one of the sections of 976, relating to the payment of the bonds, "only" was inserted after "payable", whose effect is merely to make more emphatic the declaration of the former ordinance that the bonds are payable only out of the money collected upon assessments against the property owners in the district.  Ordinance No. 976 was published, as ordered, thereafter duly presented for final passage, read a second time, as required under the rules of the council, adopted, properly signed and authenticated, and published on September 6, 1922, and, if a valid ordinance, became effective October 5, 1922.  Before it went into effect, and on September 28, 1922, the plaintiffs herein, who were also plaintiffs in the former action, filed their complaint in the same court to restrain the enforcement of Ordinance No. 976, upon the same grounds relied on in the former action to destroy 975, and upon the additional ones that the city council had lost jurisdiction over the subject-matter of a creating ordinance by its adjournment *sine die* July 18, 1922, after the passage of Ordinance No. 975, and that the injunction decree in the former action gave rise to a contract between the city and the plaintiffs, which was impaired by the passage of Ordinance 976.  A temporary restraining order was granted, and, upon final hearing, the court set it aside and entered a decree dismissing the action.  It is this decree of dismissal which is now before us for review at the instance of the plaintiffs.

Many objections to it are made. They have been presented by plaintiffs' counsel with force and ability in exhaustive briefs in which are cited and discussed authorities from many courts supposed to sustain his position. A careful consideration of the record leads us to the conclusion that the decree assailed is right and that it should be affirmed. From the foregoing statement it will be seen that, preliminary proceedings being valid, it is only the validity and effect of Ordinance 976 that is before us for consideration.

1. If, as contended by the plaintiffs, the power of the city over the subject-matter of creating the proposed improvement district was exhausted by its adjournment *sine die* July 18, 1922, after it voted favorably for Ordinance 975, and if the district court, in the former suit, held such ordinance absolutely void and a nullity, then the decree in this action might be reversed. We here state the contents of the complaint in the former action, which set forth the grounds relied upon by the plaintiffs for relief, because these grounds, and the additional ones above mentioned, are included in the complaint in the present action. Ordinance 975, as appears by the decree in the former action, was assailed on the grounds that the city officials had entered into a conspiracy with certain persons to bring about the condition of the streets which had crystallized public sentiment in favor of paving; that they entered into a conspiracy with certain persons to award a contract for its construction to a particular firm or corporation; the bonded indebtedness sought to be created by the ordinance was that of the city of Boulder, and, as such, was beyond the power of the city to incur, not that of the proposed paving district, because it was prohibited by the State Constitution and the charter of the city limiting indebtedness to a certain sum, and the bonds provided for were issued for a longer period than allowed by the provisions of these instruments; that the ordinance, in designating a certain kind of paving to be used, constituted a monopoly which could not be purchased or used by paving contractors in general,

and further violated the provision of the charter providing for competitive bidding; that it was passed as an emergency ordinance by the city council but it did not contain a statement of the facts constituting the emergency, or a showing of the need of its passage as the mandatory provisions of the charter in such cases require. For all of these reasons the ordinance, plaintiffs say, was absolutely void.

The district court, in the former action on final hearing, found against the plaintiffs upon all of these issues, except one, and held that the city council was within its rights in creating the paving district, and its actions were neither fraudulent, unreasonable nor oppressive. In effect the court found that all the preliminary proceedings leading up to the passage of the creating ordinance had been fully complied with, but said, notwithstanding the council for that reason had the right to pass an ordinance creating the district, the ordinance in question, which purported to be an emergency ordinance, because of the absence of a statement therein of the facts which constituted the necessity and urgency, was defective and irregularly passed and, as it then existed could not be enforced. In other words, the meaning of the decree in question is not that the ordinance is a nullity or absolutely void, but that it is defective. Since the council proposed at once to put it into effect from and after the day of its passage, and proposed to base all subsequent proceedings upon it, and before it became effective, if at all, as a non-emergency ordinance, the district court restrained its threatened enforcement.

The findings and decree on their face show that the court could not, and did not, hold Ordinance 975 void, or a nullity, and evidently did not intend to do so. The decisions in this country, so far as we have examined them, are unanimous that the effect of an invalid emergency clause does not make a statute or ordinance itself void, but simply postpones the time when it shall take effect. *Michelson v. City of Sacramento,* 173 Cal. 108, 159 Pac. 431; *Barton v. Recorder's Court,* 60 Ore. 273, 119 Pac. 349; *In Re Hoffman,*

155 Cal. 114, 99 Pac. 517, 132 Am. St. Rep. 75; *Kadderly v. Portland,* 44 Ore. 118, 74 Pac. 710, 75 Pac. 222; *Bickel v. Warner-Quinlan Co. (Okl.),* 174 Pac. 537; *Geller v. Dallas Ry. Co. (Tex.),* 245 S. W. 254.

The former decree, not having been declared void, but merely non-enforcible as an emergency ordinance, and the court having found that the city council was within its rights in passing an ordinance creating the district, which necessarily implies that all the essential preliminary proceedings have been complied with, the city council might safely have waited for a period of thirty days after July 18, and thereafter enforced Ordinance No. 975, as it improperly proposed to do before the same became effective under a mistaken notion that the emergency clause was valid. True, plaintiffs say Ordinance 975 could never take effect at all, because it was not published ten days before final passage, as section 18 of the charter requires. Plaintiffs do allege in their complaint no such publication. But the district court, in its decree in the former action, held that the city council was within its rights in creating the district and this necessarily involves the finding that publication was made, for, if it was not, the council was not within its right in creating the district. Plaintiffs are bound by the unfavorable, as well as favorable, parts of the former decree and may not, in this action, indirectly impeach any part of the decree which they themselves invoke. Instead, however, of enforcing 975, the council, without beginning over again the preliminary proceedings, at a subsequent regular meeting on August 22, caused to be introduced Ordinance No. 976, which was identical, with the exception of the omitted emergency clause, with Ordinance No. 975. This it had the right to do. The decree of the district court did not constitute or give rise to a contract between the plaintiffs and the city, which prevented the latter from completing or finishing the work of creating the district. This contention by plaintiffs is based upon an erroneous conception of the force and meaning of the decree. There is no provision of the charter or of the pro-

cedure ordinance that the city council must, within any specified time, pass the creating ordinance. A provision of the procedure ordinance required that a day should be fixed for the hearing of objections and protests by the property owners. In this case this was July 18, 1922. At that time protests and objections were heard and over-ruled, and no complaint is made here that the ruling was not right. The procedure ordinance says that after these hearings have been overruled, if they are overruled, the city council shall take up for consideration the ordinance for creating the district. It does not say that it shall finish consideration on that day. If it be true, as plaintiffs contend, that Ordinance 975, which the city council passed on July 18, is absolutely void and a nullity, then the action of the council in purporting to adopt it may be considered as not having been taken at all. It is not conceivable that the city council's reservoir of power to create an improvement district is exhausted by doing nothing in the way of drawing from it. As the council was not obliged to finish consideration on July 18, and, in the absence of any charter provision, or provision of a general ordinance otherwise providing, further consideration thereof might be had at any subsequent regular meeting of the city council, even though the meeting of July 18 was adjourned *sine die.* 28 Cyc. 995. *McLaughlin v. Chicago*, 198 Ill. 518, 64 N. E. 1036. At a regular meeting of the city council all legislative acts, which are within the jurisdiction of the city council, may be performed. There was no violation of any of the rights of the plaintiffs in the introduction of Ordinance 976 on August 22, which was a regular meeting of the city council at which the ordinance was introduced, nor in its subsequent adoption. And it is fitting to say that the minutes of that meeting recite that this was a regularly adjourned meeting, which might have been taken from that of July 18. The protests of these plaintiffs were overruled on July 18, and not only did plaintiffs not question the regularity of the preliminary proceedings, but the district court, in the former action, expressly decided that the city council

was within its rights in passing a valid creating ordinance. We, therefore, hold that it was within the jurisdiction of the city council to enact Ordinance No. 976 insofar as its right was affected by the former decree, or by the question of municipal procedure in the enactment of an ordinance at a subsequent regular meeting, which, at a previous meeting, had been taken up for consideration but not finished. We have been cited to no authority which would make invalid the adoption, at a regular meeting by a city council, of an ordinance introduced at a previous meeting, but not then completed.

The disposition we have made of this objection, it is true, makes unnecessary consideration of the power of the city council to validate a defective, previously enacted ordinance. It is proper, however, to say that the city council, in a special charter city, has the same legislative power in enacting ordinances that our General Assembly possesses in validating a defectively executed ordinance of municipal corporations organized under the general statute. In 8 McQuillin on Municipal Corporations, section 1893, it is said: "An ordinance that is merely insufficient or defective, which is within the scope of the municipal powers to pass, may be validated, as well as the proceedings taken thereunder, by subsequent appropriate action." If Ordinance 976, adopted by the Boulder city council on September 6, 1922, be considered a validating ordinance, it could be upheld under the doctrine announced by the author in the above quotation. Of course, if the defect in the enactment of the former was clearly *ultra vires,* or jurisdictional, such as a failure to give notice of the intention to make the improvement district, it can not be cured by a subsequent resolution or ordinance. But such is not the case here. The plaintiffs had notice of the hearings and that their objections to the creation of this district would be considered. They appeared at the hearing which the charter and ordinances provided, presented their objections and were overruled. All the preliminary proceedings were regular, and the prescribed hearing was enjoyed by the plaintiffs.

They have no other rights to protect before the ordinance creating the district is enacted. There was no necessity for beginning the proceedings over again. No provision of our state Constitution or of the charter of the city was violated in so far as concerns the manner or time of the enactment of Ordinance 976.

2. Another objection is that the city council, in this ordinance, adopted a specification for "Warrenite Bitulithic" pavement, which is said to be a patented or copyrighted brand or material, which selection is expressly prohibited by section 6 of General Ordinance 804, that provides: "No petitions or specifications shall name any material from any specified locality, quarry or kiln, or of any particular name, brand or source." This particular objection is without merit. Under the finding of the trial court upon conflicting evidence, and by the decisions generally, this pavement is not "material" at all, but is a completed or finished product, properly denominated a pavement, and was selected by the city council, which, under the charter, had such choice.

3. The most important objection raised is that the council adopted a closed specification that would not admit of competitive bidding which is mandatory under the charter and ordinances of the city of Boulder. Similar questions have been before the courts of this country and an attempt to reconcile the conflicting decisions would be futile. One rule, which is known as the Wisconsin rule, would make this ordinance void upon the ground that it prohibits competitive bidding, and the other rule, known as the Michigan rule, permits the adoption of a patented pavement, notwithstanding the fact that, in a sense, it is said to restrict competition. Our Court of Appeals, in *Rhodes v. Board, etc.,* 10 Colo. App. 99, 113, 49 Pac. 430, in an exhaustive opinion by Mr. Justice Thomson, although in that case the question was not expressly decided, in referring to the opinion of Judge Cooley in *Hobart v. City of Detroit,* 17 Mich. 246, 97 Am. Dec. 185, the first, in order of time, and one of the leading cases applying the Michigan rule, and to the

case of *Barber Asphalt Co. v. Hunt*, 100 Mo. 22, 13 S. W. 98, 8 L. R. A. 110, 18 Am. St. Rep. 530, said: "We agree with those courts, as far as their opinions have any bearing upon the question under consideration." This, it will be observed, is not in the full sense an adoption of the Michigan rule. But, as the statement was made in an improvement district case, it is apparent that had the question been squarely before our Court of Appeals, the Michigan rule would have been adopted. However that may be, where, as in the case at bar, the owner of the patented pavement has filed with the city council a binding agreement that it will furnish the pavement in question to all persons alike upon precisely the same terms and at the same cost, and is itself not a bidder, it has been held by the majority of the courts in this country not to make the specifications of a city council in selecting the patented pavement, repugnant to the provision of a statute, or a charter, or an ordinance requiring competitive bidding. It would be a work of supererogation on our part to indulge in an extended argument in support of the conclusion we have reached that this ordinance is not objectionable or void, either on the ground that it violates the charter of the city of Boulder requiring competitive bidding, or section 6 of Ordinance 804 which invalidates specifications that name material from any specified locality. We cite as some of the leading cases in support of our conclusion, the following: *Hobart v. Detroit, supra; Saunders v. Iowa City*, 134 Iowa, 132, 111 N. W. 529, 9 L. R. A. (N. S.) 392; *Johns v. Pendleton*, 66 Or. 182, 133 Pac. 817, 134 Pac. 312, 46 L. R. A. (N. S.) 990, Ann. Cas. 1915B, 454; *Whitmore v. Edgerton*, 87 Misc. Rep. 216, 149 N. Y. Supp. 508; *Barber Asphalt P. Co. v. Hunt, supra; Great Northern Ry. Co. v. Leavenworth*, 81 Wash. 511, 142 Pac. 1155, Ann. Cas. 1916D, 239; *Baltimore v. Flack*, 104 Md. 107, 64 Atl. 702; *Burns v. Nashville*, 142 Tenn. 541, 221 S. W. 828, where many authorities, pro and con are collected. The leading cases to the contrary are: *Dean v. Charlton*, 23 Wis. 590, 99 Am. Dec. 205; *Siegel v.*

*Chicago*, 223 Ill. 428, 79 N. E. 280, 7 Ann. Cas. 104; *Fineran v. Central Co.*, 116 Ky. 495, 76 S. W. 415, 3 Ann. Cas. 741.

Plaintiffs cite *Temple v. Portland*, 77 Ore. 559, 151 Pac. 724, as overruling *Johns v. Pendleton*, 66 Ore. 182, 133 Pac. 817, 134 Pac. 312, 46 L. R. A. (N. S.) 990, Ann. Cas. 1915B, 454. On the contrary, the opinion in the later case expressly states that, in the Johns Case, it was held that where the patentee of a patented pavement offers to all bidders alike, as in the instant case, the right to the use of the patented article, there can be no objection to specifying the patented pavement. The court, then distinguishes the Johns Case from the one in hand by saying that in the latter the right to lay the patented pavement selected by the city council was exercised exclusively by the owner, who refused to furnish it to other bidders, and the owner was the only, and necessarily could be the only, bidder. Hence there was no opportunity for competition.

The Wisconsin court has later restricted the rule announced in *Dean v. Charlton, supra.* Other courts, holding the Wisconsin doctrine, under a state of facts like that now before us, have receded from the proposition that patented articles can not be purchased by public boards or officials where contracts must be let to the lowest bidder. *Kilvington v. Superior*, 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45.

The "Warrenite Bitulithic" pavement is patented, not an unpatented article, and the authorities generally make this a controlling distinction in such cases. McQuillin on Municipal Corporations, section 1204.

*Colorado Springs v. Coray*, 25 Colo. App. 460, 139 Pac. 1031, cited by plaintiffs is not in point. The decision there was that services rendered in the construction of a public improvement under an unauthorized contract made in disregard of the formalities required by the statute, afforded no action against the municipality. That case is essentially different from the instant case in the facts to which the principle of law was applied.

4. Another objection is that there were included in the closed specifications for the "Warrenite" patented pavement, substantial improvements in no wise connected with, or a part thereof. In other words, the theory of counsel seems to be that since this patented pavement constituted only the top of the fully completed work, everything below that should have been provided for by a separate contract or contracts. The uncontradicted evidence is that it is almost, if not quite, universal to include in one contract the different parts which enter into and become a part of a completed pavement. The matter was discretionary with the city council and we can not interfere with its decision as no abuse was shown, and it is doubtful if the facts are as claimed by plaintiffs.

5. Another objection is that the provision in the ordinance for the issuing of bonds without submitting the question to a vote of the qualified electors, is void as in conflict with section 2, clause "d" of the charter, reading, the city "shall have the power * * * to construct, purchase and acquire and operate waterworks, power plants and other public utilities or works or ways, local in use and extent, and shall have the power to issue bonds upon the vote of the taxpaying electors in any amount necessary to carry out any of its said powers or purposes," and also contravenes section 97 of the charter reading: "Except as otherwise in this Charter provided, no bonds shall be issued for any purpose, except in pursuance of an ordinance authorizing the same, * * * and no bonds shall be issued unless the question be submitted to the vote of such qualified electors of the city as shall have paid a property tax therein," etc.

First, we observe that the clause of section 2 quoted, is restricted to bonds to pay for specified public utilities, local in use and extent. Manifestly this section was intended to apply only to bonds issued and made payable by the city in its corporate capacity, and were to be paid by the city out of general taxes. The first sentence of section 97 contains an exception, the necessary implication of which is that

elsewhere in the charter provision has been, or will be, made for the issuance of bonds which need not be approved by the qualified taxpaying electors. Turning to section 106 of the charter, which relates to the power of the council to construct improvements and create improvement districts, we find a grant of power to the city to create improvement districts, to provide the manner of assessment and costs against the abutting property, and for the issuance of bonds for the purpose of paying for the improvements, with the power to sell the same. There is no requirement in this section that the issuance of the bonds is subject to the approval even of the owners of frontage in the district. Construing these three sections of the charter together, which we are required to do by section 153 of the charter, which says: "This charter shall be construed as a whole, and shall receive liberal construction to carry out its intents and purposes herein set forth," the meaning is that bonds which are issued by the city for the payment of public utilities generally, and which become obligations of the city in its corporate capacity and payable out of general taxes, may not be issued without submitting the question to the qualified electors, while bonds which are issued for the purpose of paying for public improvements in local improvement districts, and which are payable only out of the money collected by assessments upon the owners of frontage, are within the exception clause of section 97, and may be issued by the council itself and without the approval of the frontage owners. In other words, the bonds included within the enumeration in sections 2 and 97 to be approved by taxpayers are bonds which become obligations of the city itself, and include all kinds of bonds that are not within the excepting clause of section 97. One kind of bonds, those provided for by section 106, relates to a specific as contradistinguished from a general, subject. They may be issued as provided therein, without the approval vote of taxpayers.

Plaintiffs say that the decision of this Court in *Deter v.*

*City of Delta,* 73 Colo. 589, 217 Pac. 67, is in favor of their contention. Not so. The city charter had adopted the procedure prescribed by the state statutes with the *proviso* or exception that: "save that no bond issue shall be made without a vote of the qualified electors of the city who are taxpayers under the law, authorizing such issue." The city council of Delta was about to provide in an ordinance for the issue of bonds without submitting the question to a vote of the qualified electors and proposed to give the guaranty of the city for their payment, which made them conditional obligations of the city which might ripen into an unconditional or absolute obligation. We there held that under the provision of the Delta charter, and it was the only one set out in the record, that the approval of the taxpaying electors must be had. Quite different are the charter provisions of the city of Boulder, which authorize the city council to issue bonds for the payment of the construction in a local improvement district without the vote of the qualified electors.

6. Another objection is that this ordinance contravenes article 11, section 8 of the state Constitution, which provides that no city or town "shall contract any debt by loan in any form except by means of an ordinance," and then only after approval of the taxpayers at a regular election, and only in a total aggregate amount, together with the existing debt, not in excess of 3 per cent. of the assessed valuation, and that the bonds, being issued for a term of 17 years, are invalid under the state Constitution, which limits them to a period not to exceed 15 years. These constitutional provisions relate to obligations of the city and not to obligations of a local improvement district. These bonds, as we have held, are, and on their face they purport to be, bonds of the local improvement district, and not bonds of the city, and are made payable only out of assessments for the improvements and levied upon the frontage. They are obligations, therefore, not of the city, but of an improvement district and are not within such inhibitions of the state Constitution or any provision of the special

charter of the City of Boulder. In effect the decisions of this Court in *Milheim v. Moffat Tunnel Imp. District,* 72 Colo. 268, 211 Pac. 649, and in *Shields v. City of Loveland, et al.,* 74 Colo. 27, 218 Pac. 913, are against the contention of plaintiffs under this heading. See also: *Globe v. Willis,* 16 Ariz. 378, 146 Pac. 544; *Ainsworth v. Ariz. Asphalt P. Co.,* 18 Ariz. 242, 158 Pac. 428; *City of Lawton v. West,* 33 Okl. 395, 126 Pac. 574; Dillon on Municipal Corp., Sec. 198; *Quill v. Indianapolis,* 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; *Sackett v. City of New Albany,* 88 Ind. 473, 45 Am. Rep. 467.

In *Board v. Fullen,* 111 Ind. 410, 12 N. E. 298, 13 N. E. 574, the court states that the city authorities, in issuing and negotiating local improvement bonds, act merely as an agency; not of the city but as special agents of the improvement districts, to accomplish a public end. The very language of the bonds issued in this case, reciting that they are local improvement bonds of the Boulder paving district No. 20, issued in payment of improvements, and are payable only out of the moneys collected on the assessments, clearly distinguishes this case from *United States v. Fort Scott,* 99 U. S. 152, 25 L. Ed. 348, and *Fowler v. Superior,* 85 Wis. 411, 54 N. W. 800.

In reaching our conclusion, we have not been unmindful of the decisions of this Court that the procedure prescribed by the Constitution, statutes and ordinances, in creating improvement districts, is to be strictly followed, and that any substantial deviation therefrom, or non-observance thereof, will render void creating and assessing ordinances. Even so, and giving full effect to this rule, every condition precedent to the right and power of the city council to enact an ordinance creating the district has been complied with.

There are some other and minor questions raised by plaintiffs, which, in view of the foregoing, we consider of no moment. They concern administrative and discretionary power of the city council and are, at best, irregularities, or such as not to affect the result.

The findings of fact of the district court are sustained by the evidence. The principles of law applied to the facts are those which we have held to be applicable. The decree dismissing the action is, therefore, affirmed.

MR. CHIEF JUSTICE TELLER, MR. JUSTICE ALLEN and MR. JUSTICE DENISON, not having heard the oral argument, did not participate in the decision.