## No. 11,448.

### CITY OF TRINIDAD, ET AL. *v.* MADRID, ET AL.

Action to enjoin the making of municipal improvements. Judgment for plaintiffs.

### *Reversed.*

1.   MUNICIPAL CORPORATIONS—*Ordinances—Correction.* A defect in a municipal ordinance can be corrected by a subsequent one, unless such defect is ultra vires or jurisdictional.

2.   *Improvements—Objection—Estoppel.* In an action to enjoin municipal paving, record reviewed, and the action of plaintiffs in acquiescing in the procedure of the city council, held to estop them from obtaining the relief sought.

*Error to the District Court of Las Animas County, Hon. A. C. McChesney, Judge.*

Mr. B. H. SHATTUCK, Mr. A. W. McHENDRIE, Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, for plaintiffs in error.

Messrs. NORTHCUTT & NORTHCUTT, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THIS case has been here before, *Madrid v. Trinidad,* 76 Colo. 294, 230 Pac. 1006, q. v. We there held, following *Ellis v. La Salle,* 72 Colo. 244, 211 Pac. 104, and *Deter v. Delta,* 73 Colo. 594, 217 Pac. 67, that the proceedings in this case were invalid because the original ordinance followed subdivision C, of chapter 120, R. S. 1908, instead of the then newly enacted chapters 192 and 193, S. L. of 1921. The present condition of the case, however, requires a fuller statement of the facts than we there gave.

Pursuant to certain petitions of abutting property owners, the city of Trinidad commenced proceedings to improve certain streets and to form a paving district. Madrid and others applied for a temporary injunction which was denied; thereupon the city immediately let a contract. Later the plaintiffs filed a supplemental complaint, setting forth what had happened since the denial of the temporary injunction, whereupon the city demurred. The demurrer was sustained, which action we held to be error and reversed the case. Thereupon the city answered, a demurrer to the answer was sustained, and the case comes here now to review that action by the district court.

It is contended by the defendants in error that there are no substantial facts now before us which we have not considered. It is strenuously insisted by the plaintiffs in error that the allegations of the answer raise questions that we have never considered. It becomes necessary, then, to review the facts in detail.

The original complaint states that the plaintiffs own real property within the limits of the proposed district; that certain persons have petitioned for the formation of the district and for the paving, etc., of the streets therein; that on May 9, 1921, the council adopted a resolution reciting the petition, etc., and resolved that the city engineer prepare details, specifications and an estimate of the total cost and a map showing the approximate amounts to be assessed upon the several lots, and the resolution provided that "the cost of improvements shall be assessed   *   *   *   in proportion as the frontage of each lot or tract of land is to the frontage of all the lots or lands so improved   *   *   *."

The complaint further alleged that on June 27, 1921, the council adopted a resolution which recited the previous proceedings and that the engineer had reported the complete plans, specifications and map, and resolving "that they   *   *   *   be adopted, and directing the city clerk to publish a notice to the owners of the property to be assessed of the kind of improvements proposed   *   *   *   the probable cost per front foot as shown by the estimates of the engineer, and the time, not less than thirty days after the first publication, when a resolution or ordinance defining the improvements will be finally considered"; that the maps and estimates were open for inspection, and that "all complaints and objections that may be made in writing concerning the proposed improvements by the owner or owners of any real estate to be assessed will be heard and determined by the city council before the final action of the city council thereon."

The complaint further alleged that the city clerk published a notice accordingly; that the plaintiffs filed written protests on the grounds, substantially: (1) That the petition was not signed by a majority of the owners; (2) that many names were signed without authority; (3) that the assessment was to be by frontage and not by benefits.

The complaint then further alleges that the council, on August 8th, the day appointed for the filing of the protests, met to consider the passage of an ordinance designed to create the proposed district; that the plaintiffs presented their protests and then and there requested that the council fix a date at which the plaintiffs might produce evidence in support of the allegations contained in said protests; "That said council then and there refused, either then or at any other time, to hear evidence upon, or give any consideration to, the question of benefits," but announced their intention to assess by frontage.

That a proposed ordinance creating the district was thereupon read and ordered to be published, and on August 22nd the council finally passed it; that it provides for assessment by frontage and that the assessment by frontage will greatly exceed the benefits to the property of the respective plaintiffs.

That unless restrained the defendants will assess the plaintiffs' land by frontage; wherefore they pray an injunction. The ordinance creating the district recites the previous proceedings, finds that due notice has been given, provides that bonds be issued and the form thereof and other matters, and that "the cost thereof shall be assessed upon all lots or tracts abutting upon the said Maple Street Paving District No. 11 in proportion as the frontage of each lot or tract of land is to the frontage of all the lots or tracts of land so improved."

September 12, 1921, an answer was filed to this complaint in which defendants, after certain denials, including a denial of refusal to hear or consider the question of benefits, said that on the 8th day of August and at all times thereafter they intended to and would give a full and careful hearing on the question of benefits and the ratio of costs thereto, of which ample notice would be given, and that when an assessing ordinance was passed it would assess the costs according to the benefits and

not to the frontage. The injunction was thereupon denied. There the matter rested until February 24, 1923, when the plaintiffs filed a supplemental complaint in which they alleged that on the 12th day of September, 1921, the defendants awarded a contract for the construction of the proposed improvements, caused bonds to be issued of the approximate amount of $83,000 and proposed to enact an ordinance on the 13th of February, 1923, assessing the plaintiffs' property and improvements and imposing a lien thereon, and in pursuance of said assessment, said defendant proposes to collect from these plaintiffs moneys for the purpose of redeeming and paying said bonds so issued and they asked for a perpetual injunction.

The said proposed ordinance, which is set forth in full, "finds and adjudges that said assessments are made according to law and in proportion to the benefits accruing to the various lots and tracts in said districts and that all   *   *   *   steps have been taken in due form and time prior to the making of this assessment."

To this supplemental complaint, considered in connection with the original complaint, a demurrer was filed which was sustained and the decision reversed, as we have above stated.

Thereupon, January 17, 1925, the defendants answered, incorporating their previous answer, admitting that they had awarded the contract for $83,000, issued bonds for that amount, and enacted an assessing ordinance as stated in the supplemental complaint and "denying each and every allegation in said complaint and supplemental complaint not hereinabove specially admitted."

And for a second and further answer they plead an estoppel to say that the proceedings are invalid or the property not legally assessed, upon the grounds: That the petition was valid and signed by a majority of the abutting owners; that May 9, 1921, the city council

adopted a resolution finding that said petition had been signed by the owners of a majority of the frontage, and authorizing the preparation by the engineer of plans and specifications; that the engineer presented plans and specifications; that the city council approved the same and published a notice fixing August 8, 1921, as the time for hearing the complaints and objections that might be filed, as stated in the original complaint.

The answer further states that thereafter the plaintiffs filed their objections and protest as stated in the original complaint; that on August 8th the city council met, that the plaintiffs appeared in person and by counsel and presented their objections.

The answer then alleges that said city council then and there gave a full, fair and complete hearing to said objections and said complaints; and a full, fair and complete consideration of the same; and at said time and place acted upon and determined said protests and objections in so far as the said protests and objections presented matters at that time capable of final determination, but that they could not then and there as a matter of fact or law finally determine the total amount of costs of said improvement, nor the apportionment thereof to the property abutting upon said proposed improvement, but the council then and there agreed that before the introduction, passing or adoption of the assessing ordinance the plaintiffs, and all other owners, would be given a full and fair hearing upon adequate and legal notice; that full, fair and careful consideration would be given to any and all evidence which would be offered by plaintiffs as to the amount of benefit which might accrue, and would assess the cost of improvements in all respects according to law. That after considering and determining all objections, so far as the same were capable of determination at that time, the city council on the 22nd day of August, 1921, passed the creating ordinance known as No. 491.

The answer then goes on that the plaintiffs brought their suit on the 9th of September; that on the 12th a temporary injunction was refused; did not then claim that ordinance 491 was invalid or that the proceedings were void, but merely that they ought to be heard on the amount and ratio of benefits and assessments; that after the temporary injunction was denied the case was allowed to remain open for the sole and only purpose of permitting plaintiffs, when the time should come for the defendants to take the steps prescribed by law for the levying of such assessments, to show, if possible, that their property was not assessed in accordance with benefits. "That they did not except or obtain a writ of error, or cause to be brought to trial the issues raised by said original complaint and answer nor seek to have judgment entered thereon by this court, but acquiesced in said order and permitted these defendants to proceed to complete the said improvement district, and without objection or protest permitted the said council to enter into contracts for the construction of said improvements and to issue negotiable bonds for the payment of the cost thereof, and to incur obligations in large sums of money for such costs."

That relying upon all these the defendants proceeded to let the contract and complete the work, issue the bonds, pay the contractors, and "thereafter and on or about the 28th day of November, A. D. 1921, the said city council published the required 10-day notice for hearing and objections to the assessments and then duly and regularly passed an ordinance amending and supplemental to said ordinance referred to in paragraph 7 hereof, (the creating ordinance) a copy of which supplemental ordinance is hereto attached."

This ordinance, which is numbered 513, is the same as set forth in the supplemental complaint. The answer then alleges that the plaintiffs did not file any objection to or protest against the proposed ordinance; that the

city council met at the time stated in the notice and
gave to all full opportunity to be heard concerning the
assessment and the apportionment thereof and the ben-
efits, but plaintiffs did not appear, and that all com-
plaints and objections and protests which were made
were heard, carefully considered and determined; that
the plaintiffs did not thereafter make any objection;
that the total value of benefits was greater than the cost
of improvement, and that the cost of said improvement
was by said council in fact apportioned to the abutting
property in proportion to the benefits accruing by such
improvements to said property, in all respects in con-
formity with the statutes of the state of Colorado in
that behalf enacted and then in force. That the council
acted in good faith, considered all evidence with respect
to the question of benefits and apportioned the cost
strictly in proportion to the benefits actually accrued to
the abutting lots.

There are two questions which arise under this answer:
First. Had the city power in the assessing ordinance
to correct erroneous statements in its previous proceed-
ings that the assessment would be by frontage? Second.
Are the plaintiffs shown to have done anything to estop
them from taking advantage of that error?

It is urged that the statement in the first part of the
procedure that the assessments would be by frontage
was a mere irregularity, because it was not necessary
to state it at all at that stage, and that it therefore may
be corrected; but we meet here a difficult situation.

Since the record when the case was here before showed
that the council intended to and would give the plaintiffs
a full hearing before passing the assessing ordinance,
and intended to and would levy the assessment according
to benefits, the facts now before us with reference to the
regularity of the proceedings are the same as then, ex-
cept that it now appears that plaintiffs have had full
opportunity to be heard, but did not take it, and that the

assessment has been actually made according to benefits as plaintiffs claim it ought; but the effect of our former opinion was that even if the defendant should grant a full hearing and should assess according to benefits, the proceedings would still be invalid because invalidly commenced. Unless, then, we overrule our former opinion, we must say that the fact that they have granted a full hearing and have assessed according to benefits cannot be a defense to the injunction.

We are convinced, however, that whether or not our decision, on the record as it then stood, was right, our former opinion was wrong in intimating that the error in the first proceedings could not be corrected by a subsequent ordinance. We were attempting to follow *Ellis v. LaSalle, supra,* but nothing in that case was decided concerning correction by subsequent legislation, and the more recent case of *Sanborn v. Boulder,* 74 Colo. 358, holds such correction valid, that a defect in an ordinance can be corrected by a subsequent one unless such defect was ultra vires or jurisdictional, which the defect now in question is not. It is not so, because the first notice said nothing of assessment by frontage, and the statement in the first ordinance that assessment would be by frontage was surplusage. We were also attempting to follow *Deter v. Delta,* 73 Colo. 589, but we erroneously assumed that that case held that plaintiffs had a statutory right to a hearing on the assessments at the preliminary hearing, i. e. the hearing on the creation of the district, whereas it merely holds that they then had a right to a hearing on the question of the creation of the district, which the record in the present case shows the plaintiffs actually had.

However this may be the defendants now add the fact that upon the denial of the motion for a temporary injunction the case was allowed to remain open for the sole and only purpose of permitting plaintiffs to show, if possible, that their property was not assessed accord-

ing to benefits when the time should come for the defendants to take the steps prescribed by law for the levying of such assessments; that plaintiffs acquiesced in this and did not then make the objection that the ordinance No. 491 was invalid, and that the defendants, relying on the failure of plaintiffs to except to the denial of the temporary restraining order, and to sue out a writ of error and to bring to trial the issues, and to have judgment entered, and relying on the acquiescence of plaintiffs in said order and their acquiescence in permitting defendants to proceed to complete the improvements and in permitting defendants to enter into contracts and issue bonds, and relying on their failure to protest, object or complain against the validity of ordinance No. 491, defendants proceeded to the completion of the work, to the issue of bonds and an assessment. They claim this as an estoppel against the plaintiffs, sufficient to prevent them from taking the position that that ordinance is so defective that it cannot be amended.

We think that the fact, if it be a fact, and we must take it to be such, that the case was left open by the court for the sole purpose of allowing the plaintiffs to object to the sufficiency of any hearing that might subsequently be accorded to the plaintiffs; and the fact that plaintiffs acquiesced in that procedure and so prevented the defendants from abandoning their proceedings and beginning anew, and led them to go on at great expense, although it may be that it cannot validate the proceedings, yet it surely deprives plaintiffs of their equity and so of their right to an injunction.

If the plaintiffs' conduct was as alleged they are estopped. If they had fair hearing on the question of creating the district, and if they had a fair opportunity to be heard on the question of assessments, cost and benefit, and if the assessment was according to benefits, they must lose their case, unless some new facts are shown which we cannot foresee.

The case must be reversed with leave to plaintiffs to reply, then let the issues be tried and the case determined accordingly.

MR. JUSTICE CAMPBELL not participating.