## MANSELL v. CITY OF NEW CORDELL et al.

No. 16910—Opinion Filed Nov. 16, 1926.

1. **Municipal Corporations—Street Improvements—Resolution of Necessity—Requisites.**

Under the provisions of section 5, chapter 173, Session Laws 1923, upon the approval of plans, profiles, specifications, and estimates of the engineer, the governing body of a city or incorporated town must declare by resolution that the work of improvement is necessary to be done, and cause said resolution to be published for six consecutive issues in a daily newspaper or in two issues of a weekly newspaper published in said city; such resolution must describe the improvements to be made, the extent and nature thereof, in such terms as to enable the property owners affected to intelligently protest or acquiesce in the same.

2. **Same—Conformity of Resolution to Improve.**

A resolution of the governing body of a city or incorporated town expressing its determination to proceed with the improvement authorized by the resolution of necessity must conform in respect to extent and character to the improvements proposed in the resolution of necessity.

3. **Same—Unauthorized Striking of Part of Improvements from Necessity Resolution After Adoption.**

The provisions of section 5, chapter 173 of the Acts of the Legislature of 1923, that "Any number of streets, avenues, lanes, alleys or other public places or parts thereof, to be improved, may be included in one resolution," does not authorize the governing body of a city or town, after the adoption of a resolution of necessity designating a specific street or streets as one improvement, to afterward change such resolution of necessity by striking therefrom a material part of the improvement proposed to be made.

4. **Appeal and Error—Moot Questions—Rights to Enjoin Assessments for Street Improvements not Rendered Moot by Completion and Issuance of Bonds Pending Appeal.**

Where. pending a suit to enjoin the illegal levy of a special tax against adjacent property owners for public improvements, the governing body of a city or incorporated town completes the improvements and issues bonds therefor, pending an appeal to this court, such action does not render the proceedings moot.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Washita County; E. L. Mitchell, Judge.

Action by R. J. Mansell et al. against the City of New Cordell et al. From judgment for defendants, plaintiffs have appealed. Reversed and remanded.

A. J. Welch, for plaintiffs in error.

LeRoy Jones, G. A. Paul, and A. Gray Gilmer, for defendants in error.

Opinion by DICKSON, C. The plaintiffs in error were plaintiffs and the defendants in error were defendants in the court below, and will hereafter be so designated.

On May 1, 1925, the plaintiffs commenced this action in the district court of Washita county to enjoin the governing body and the defendant city of New Cordell and J. H. Baldwin from carrying out a contract entered into pursuant to a paving ordinance.

The material allegations of the plaintiffs' petition are that the defendant city of New Cordell is a municipal corporation operating as a city of the first class in Washita county, Okla., and that the individual defendants, except J. H. Baldwin, are the mayor, clerk, and council of said city; that on January 19, 1925, the governing body of said city of New Cordell passed a resolution of necessity, and adopted plans, specifications, and estimates of costs for the paving of certain streets in said city and notified property owners affected by said improvement that unless the owners of more than 50 per cent. in area of the lands liable to assessment to pay for said improvements filed protests with the city clerk of said city within 15 days from the last publication of said notice, the mayor and city council would cause said improvements to be made and assess the costs thereof against the property affected by said improvements.

Plaintiffs then alleged that the owners of more than 50 per cent. of the area liable to be specially assessed to pay for said improvements did, within 15 days, file with the city clerk of the defendant city their protests in writing. A copy of the resolution of necessity is attached to and made a part of the petition. Plaintiffs then alleged that the governing body of said defendant city ignored said protests and ordered the paving of certain isolated portions of Main street, and entered into a contract with the defendant J. H. Baldwin to pave said portions of Main street, and agreed to assess a paving tax against the property of the plaintiffs located adjacent to said proposed paving; and that unless restrained by the court the officers of said defendant city will levy and collect said tax against the property of the plaintiffs.

It is further alleged that Main street, described in said resolution of necessity, between the east line of the St. Louis & San Francisco Railway Company's right of way and the west line of East street, a distance of 5½ blocks, is one continuous thoroughfare through the city of New Cordell, running from east to west; that the resolution of necessity called for the pavement of Main street from the east line of the St. Louis & San Francisco Railway Company's right of way on the west continuously to the west line of East street; that the published notice of the proposed improvement of said city was between said points; that after the property owners affected by said improvement had protested such improvement, the governing body of said city arbitrarily and without authority of law struck from said proposed improvement north and south Main street between College and Market streets of said city, and passed an ordinance and contract for the pavement of two blocks of Main street on the east and about two blocks of said city on the west; and that these two portions of Main street are disconnected, and that the improvement of these disconnected portions of said Main street was not contemplated by the resolution of necessity passed and published. The plaintiffs pray that the defendants be perpetually enjoined from carrying out said paving contract, and that the defendant city and its officers be perpetually enjoined from passing an ordinance or resolution assessing paving taxes or any other tax against the property of the plaintiffs and for general relief.

The defendants answered by way of general denial. Upon the issues thus framed, the case was tried in said district court on July 3, 1925.

The evidence offered on the part of the plaintiffs fully supports the allegations contained in the petition. Main street runs through said city east to west, College street and Market street from north to south. The court house square of said city is 150 feet from north to south and 300 feet from east to west; the center of said square from north to south being on a line with the center of Main street. The block north of the court house square is block 46 and the block south of the court house square is block 53, and Main street runs between block 46 and the court house square on the north and between block 53 and the court house square on the south. The improvement proposed in the resolution of necessity was to pave Main street from the east line of the St. Louis & San Francisco Railway Company's

right of way thence east to the west line of East street. being a distance of 5 blocks from east to west, and College street on the west of the court house square, a distance of 2 blocks, and Market street on the east of the court house square, a distance of 2½ blocks. All of the streets and parts of streets proposed to be improved are connected so that the property owners from any part of the district could travel to any other point in the district over a paved street, had the improvement been made as designated and described in the resolution of necessity. The material parts of this resolution are as follows:

"Be it Resolved by the Mayor and City Council of the City of New Cordell, Oklahoma.

"First: That the plans, profiles, specifications and estimates of cost for paving of street improvement district No. 1, comprising the streets as set out in the title of this resolution as prepared and submitted by the engineers, are hereby adopted and approved and ordered filed in the office of the city clerk of the city of new Cordell, Oklahoma.

"Second: * * *

"Third: * * *

"Fourth: That if the owners of more than one-half in area of the lots, pieces or parcels of ground liable to assessment for the cost of these improvements shall not within fifteen (15) days after the last publication file with the city clerk their protest in writing against such improvements, then the mayor and city council shall cause such improvements to be made and contracted for, and shall levy assessments and issue street improvement bonds for the payment thereof as provided by House Bill No. 189, approved March 23, 1925."

"Adopted and approved this 19th day of January, 1926."

This resolution was published for two consecutive issues in a weekly newspaper published in said city. Pursuant to this notice, the plaintiffs and numerous other property owners affected by the proposed improvement filed their protests against the same. And on the 16th day of February. 1925, the city council of said defendant city at a regular meeting took up and considered said protests. It clearly appears from the evidence that the owners of more than 50 per cent. of the property affected by said proposed improvement protested against the same. The governing body of said city, in order to obviate the difficulty, "dropped from street improvement No. 1" all of Market street and College street and North and South Main streets, for the reason that sufficient protests had been filed against said streets.

On the 6th day of March, 1925, the gov-

erning body of said city adopted what it denominated paving resolution No. 1-3, providing for the paving of two disconnected portions of Main street above referred to, and entered into a contract with defendant Howard H. Baldwin to pave said portions of Main street and contracted to pay therefor by special assessment against the property adjacent to said portions of Main street affected by said improvement. The profile of said improvement was introduced in evidence, from which it clearly appears that the entire proposed improvement described in the resolution of necessity was in reality one project. The improvement proposed by said resolution was to pave around the court house square and along Market and College streets, that being the business part of the city, and Main street from the east line of the St. Louis & San Francisco Railway Company's right of way to the west line of East street.

At the close of the plaintiffs', case the court sustained a demurrer to the evidence and dismissed the petition. A timely motion for a new trial was filed and overruled and an exception reserved, and plaintiffs have appealed to this court.

Several assignments of error are presented in the plaintiffs in error's brief, but from the conclusion we have reached it will only be necessary to consider the first proposition, which is, in effect, that under the Laws of 1923, after the governing body of a city had adopted a resolution of necessity declaring its intention to pave a continuous street or streets between two or more points in such city, it is without authority to order improvements under said resolution of disconnected portions thereof.

By its resolution of necessity, the mayor and council of said defendant city established improvement district No. 1, describing the streets and parts of streets proposed to be improved. The entire proceedings were had under the provisions of chapter 173, Session Laws 1923. Section 3 of that act provides that when the governing body of any city shall deem it necessary to improve any street, alley, lane, or part thereof, it shall require the city engineer to prepare profiles, specifications, and estimates of the probable costs of such improvement. This provision, it appears, was complied with, and upon the filing of the profiles, plans, specifications, and estimates, the governing body of said city found the same to be satisfactory, and by resolution approved the same and caused this resolution to be published as required by section 5 of said act.

It should be borne in mind that the whole improvement described in the resolution and profiles was denominated as "Improvement District No. 1," and the property owners were notified that unless the owners of more than 50 per cent. of the property affected by the proposed improvement protested within 15 days said improvements described in the resolution of necessity would be made. There was no suggestion in the notice or resolution published that it was the intention of the governing body of said city to make any other or different improvement than that mentioned and described therein. The owners of the property on East and West Main street might have been perfectly willing for the improvement to have been made according to the plans, specifications, and resolution. And the failure of the owners of more than 50 per cent. of the property on east and west ends of Main street to remonstrate against the improvement as proposed could by no process be construed as an acquiescence on their part in an improvement of two disconnected portions of said district. In other words, the authority of the governing body of said city to make said improvements and to collect the costs thereof by special assessments against adjacent property is, in the nature of things, based upon the notice. Their failure to protest amounted to an acquiescence and authorized the governing body to proceed with the improvement described in the resolution of necessity and nothing more.

"When a street is opened or improved on petition and notice, the extent of the opening or the character of the improvement must substantially comply with the terms of such petition and notice; nor may substantial variance from the resolution of intention be made in the final ordinance." 28 Cyc. 1009.

"If it is proposed to improve a street for its whole length through several blocks, the property owners may be perfectly content to have the work done, and would have no motive to attend at the hearing. But they might have grave objections to improving the street for only a portion of the distance. For example, if it were proposed to grade a street for six blocks, the property owners might consider it a desirable improvement; but would have serious objections to grading detached portions of it." City of Stockton v. Whitmore, 50 Cal. 554; McBean v. Redick (Cal.) 31 Pac. 7; City of Lincoln v. Harts (Ill.) 95 N. E. 200; St. John v. City of East St. Louis (Ill.) 27 N. E. 543; Jones on Taxation by Special Assessment, sec. 839, p. 8; Hamilton on Special Assessments, sec. 392.

The property owners affected by the reso-

lution of necessity in this case were never notified and had no opportunity to protest the improvements actually ordered to be made by the final resolution of the governing body of said city. They were notified that if they failed to protest, all of the improvements described in the resolution of necessity would be made. The resolution directing the improvement of these disconnected parts of Main street was not supported or authorized by the resolution of necessity, and was unauthorized and void, as well as all subsequent proceedings.

It is contended, however, that section 5 of chapter 173, Session Laws 1923, authorized any number of streets, avenues, alleys, lanes and other public places, or parts thereof, to be improved, to be included in one resolution of necessity.

Conceding that separate and distinct improvements may be advertised in one resolution of necessity, it is perfectly clear that that was not done in this case. The resolution of necessity in the instant case submitted the entire project to the property owners as one improvement.

The defendants have filed a motion to dismiss the appeal, supported by affidavit to the effect that since the trial of this case in the court below the defendant city has caused said improvements to be completed, and have issued bonds therefor to the defendant R. H. Baldwin and have levied special assessments against the property of the plaintiffs to pay said bonds, and for that reason contend that the questions presented by this appeal have become moot. We do not so understand it. The relief sought by the plaintiffs was to enjoin the defendant from the imposition and collection of taxes upon their property imposed by the unauthorized improvement proceedings, to enjoin the issue of the bonds and the levy of special assessments to pay the same. If they were entitled to this relief, and we have found they were, they are now entitled to an injunction preventing the defendants from subjecting their property to the payment of the special assessments to pay for said improvements. Manley et al. v. City of Marshfield et al. (Ore.) 172 Pac. 488; James Johns v. City of Pendleton (Ore.) 133 Pac. 817, 46 L. R. A. (N. S.) 990.

The judgment is reversed, and the cause remanded to the district court of Washita county, with directions to set aside the judgment · dismissing the plaintiffs' petition and overrule the demurrer to the plaintiffs' evidence and further proceed with the case in conformity with the views herein expressed.

By the Court: It is so ordered.